**BOICH MINING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 91–5387.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 7, 1991.

Decided Jan. 31, 1992.

Rehearing and Rehearing En Banc Denied March 31, 1992.

---

David J. Laurent, Polito & Smock, Pittsburgh, Pa. (argued), for petitioner.

Karen Cordry, Asst. Gen. Counsel (argued), Aileen A. Armstrong, Deputy Associate Gen. Counsel, Karen Cordry, Peter Winkler, Julie Broido, N.L.R.B., Office of Gen. Counsel, Washington, D.C., Frederick Calatrello, Director, Susan Fernandez, N.L.R.B., Cleveland, Ohio, for respondent.

Thomas M. Myers, Shadyside, Ohio, George N. Davies, John L. Quinn, Long-

shore, Nakamura & Quinn, Birmingham, Ala., William B. Manion, Washington, Pa., for intervenor.

Before BOGGS and NORRIS, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

TIMBERS, Senior Circuit Judge.

Appellant Boich Mining Company (Boich) petitions for review of the decision and order of the National Labor Relations Board (Board) affirming a finding made by an administrative law judge (ALJ) that Boich and the Aloe Coal Company (Aloe) are allies within the meaning of §§ 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(b)(4)(i) and (ii)(B) (1988). *United Mine Workers (Boich Mining)*, 301 N.L.R.B. No. 123 (1991).

The sole issue on this petition for review is whether the ALJ's finding as affirmed by the Board is supported by substantial evidence. Since we agree with Boich that the Board misapplied the standard for determining whether Boich is a neutral employer worthy of protection under § 8(b)(4)(i) and (ii)(B), we grant the petition for review, reverse the Board's dismissal of the complaint and remand the case to the Board with instructions to reinstate the complaint, to find that the United Mine Workers (UMW) violated §§ 8(b)(4)(i) and (ii)(B) by striking and picketing Boich, and to provide an appropriate remedy.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Boich is an Ohio corporation which operates a surface coal mine in Bloomingdale, Ohio. Aloe is a Pennsylvania corporation which operates a surface coal mine near Imperial, Pennsylvania, approximately thirty one miles from Boich's surface mine. Both corporations are wholly owned subsidiaries of Aloe Holding Company (Aloe Holding), a Pennsylvania corporation owned and operated by six individuals.

The UMW, its District 6 and its Local No. 7449 are labor organizations which represent the production and maintenance employees at Boich for the purposes of collective bargaining. The UMW also represents the production and maintenance employees at Aloe. Prior to 1988, both Boich and Aloe operated under collective bargaining agreements with their union employees. In 1988, Boich and its union employees agreed to a subsequent collective bargaining agreement which currently is in effect. On July 11, 1989, Aloe's employees, unable to agree to a subsequent collective bargaining agreement with Aloe, went on strike.

On August 3, 1989, the UMW called upon the employees of Boich to strike in support of the striking workers at Aloe. Boich asserted that this second strike was to prevent Boich from continuing its regular business with Aloe. On August 4, 1989, Boich filed an unfair labor practice charge against UMW, alleging that the strike violated §§ 8(b)(4)(i) and (ii)(B) of the Act because it constituted a primary strike against a neutral employer.

On March 22, 1990, after a full hearing, Administrative Law Judge Thomas A. Ricci rendered a decision and order finding that Boich and Aloe were a single or allied employer and that the UMW strike against Boich was a permissible extension of the original strike on Aloe. Pursuant to the finding that Boich was not a neutral employer, the ALJ dismissed Boich's complaint. In its decision of February 27, 1991, the Board affirmed the ALJ's findings and the dismissal of Boich's complaint. In affirming the ALJ, the Board relied on evidence of common ownership and interrelation of operations.

On April 1, 1991, Boich appealed to this court.

II.

In reviewing the Board's findings of fact and its application of the law to the facts, we adhere to the substantial evidence rule. *Adair Standish Corp. v. N.L.R.B.*, 912 F.2d 854, 859 (6th Cir.1990). Evidence is

---

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

substantial if it is " 'adequate, in a reasonable mind, to uphold the decision.' " *Id.* (quoting *N.L.R.B. v. Ohio Masonic Home,* 892 F.2d 449, 451 (6th Cir.1989)).

■ Section 8(b)(4) of the Act, known as the secondary boycott section, makes it unlawful for a labor organization to picket or otherwise pressure an employer with whom it has no dispute. *Newspaper & Mail Deliverers Union of New York (Gannet Co.),* 271 N.L.R.B. 60, 67 (1984) (Newspaper & Mail Deliverers). *See also N.L.R.B. v. Denver Building Trades Council,* 341 U.S. 675, 692 (1951). The purpose of this statutory provision is to preserve the rights of employees to strike against their employers with whom they have a legitimate dispute, while protecting other neutral or secondary employers from becoming enmeshed in the dispute because they happen to conduct business with the employer being struck. *Newspaper & Mail Deliverers, supra,* 271 N.L.R.B. at 67. As a result, "the provision makes it unlawful to resort to a secondary boycott to injure the business of a third person who is 'wholly unconcerned' or 'not involved in any way' in the dispute between an employer and his employees." *Teamsters Local 50 (E.J. Dougherty Oil),* 269 N.L.R.B. 170, 174 (1984) (quoting *Teamsters Local 560 (Curtis Matheson),* 248 N.L.R.B. 1212, 1213 (1980)).

■ The Board, however, has held consistently that an otherwise neutral employer may lose this protection if that employer becomes somehow "allied" with the primary employer. Under this "ally doctrine", a neutral employer may be stripped of its neutral status (1) if it performs "struck work" for the employer, i.e. work that it otherwise would not perform absent a strike, or (2) if the two employers become so closely entwined as to function essentially as a single entity. *Newspaper & Mail Deliverers, supra,* 271 N.L.R.B. at 67. In both instances, the union bears the burden of establishing that the two employers are allies under the Act. *Id.*

■ The Board and the courts have enunciated four criteria to determine whether two employers should be treated as a single entity: (1) common ownership; (2) common management; (3) centralized control of labor relations; and (4) interrelationship of operations. *Id.; see also Teamsters Local 50 (E.J. Dougherty Oil), supra,* 269 N.L.R.B. at 174; *Carpenters District Council (Baxter Construction),* 201 N.L.R.B. 23, 25–26 (1973). While not all factors need be present and no single factor bears overwhelming importance in the analysis, the Board has established a hierarchy among these factors:

> "Of 'paramount significance is the nature of day-to-day operations and of labor policies in the entities in question.' Moreover, it is active rather than potential control which is significant. Indeed, even in the absence of common ownership, the Board will find separate but related employers not to be neutrals if they jointly control the labor relations of a group of employees."

*Teamsters Local 50 (E.J. Dougherty Oil), supra,* 269 N.L.R.B. at 174 (citations omitted). *See also Teamsters Local 688 (Fair Mercantile),* 211 N.L.R.B. 496 (1974). In short, the analysis of whether two companies should be considered allied depends on the practical, day-to-day operations of the companies, and the issue will be decided on a case-by-case evaluation of the factual relationship between the two entities.

■ Applying these considerations to the relationship between Boich and Aloe, we hold that the union's efforts to ally the two coal companies constitute a violation of §§ 8(b)(4)(i) and (ii)(B).

It is true that both Boich and Aloe are wholly owned subsidiaries of Aloe Holding Company. It is not unusual, however, to find that two companies are not allied simply because they are under common ownership. *E.g., United Food & Commercial Workers Int'l Union, Local No. 1439,* 271 N.L.R.B. 754, 756 (1984) ("Common ownership and potential control of the day-to-day activities of corporate divisions is inherent in every corporate division relationship, and certainly is not a factor to be accorded weight.").

This is particularly true where the management operations of the subsidiaries

are kept separate intentionally. In the instant case, Boich and Aloe each has a separate management, under a different company president and vice-president. Boich's president, Abe Bryan, was responsible for his company's operations, including hiring, firing, day-to-day labor relations, safety and all personnel and grievance matters. Aloe's vice-president, Grant MacSwain, had similar responsibilities at Aloe. At each company, labor relations are entirely separate. Each company's operations are completely separate: Aloe and Boich maintain separate offices, payroll systems, bank accounts, financial and accounting operations. There is no interchange of either employees or supervisors. The two companies do not sell coal to the same principal customers. Boich's coal is normally hauled by trucking companies completely unrelated to Aloe Holding. Based on these factors, both the ALJ and the Board agreed that Boich appeared to be a neutral party.

In evaluating the interrelatedness of operations, the last of the four factors stated above, however, the Board held that Boich could not be considered a neutral party. Boich purchased several pieces of equipment from Aloe, in what the Board termed "arm's length transactions". The Board also held that Boich and Aloe participated in a coal washing and blending process. Taken as a whole, the Board concluded that the evidence established that the two companies were interrelated. We disagree with the Board's conclusion that, based on this evidence, Boich and Aloe are allies.

In the washing and blending process, a certain amount of Boich's coal regularly is sent to the Aloe facility, where it is washed and blended with Aloe coal before it is shipped to customers. In this process, some of the Boich coal is washed to remove dirt and debris. The Boich coal then is blended with the Aloe coal to produce a mixture that is lower in sulfer content than Boich coal, and lower in ash content than Aloe coal. The parties agreed at oral argument that the ultimate product is a blend of coal distinctly different from that produced independently by either company. At the end of the washing process, each company takes a proportionate share of the final product based on the amount of coal contributed. The amount of Boich's coal used in this process is approximately 8% of its total output. The amount of Aloe's coal used is approximately 5–6%.

Contrary to the Board decision, we hold that the new product created through this washing and blending process is not only a relatively small amount but also is based on a typical arms-length business transaction. Arms-length transactions are rarely present in a single employer situation. *Newspaper & Mail Deliverers, supra,* 271 N.L.R.B. at 67–68 (contract between company and wholesalers is arms-length, precluding finding of single employer). *But see Teamsters Local 560, supra,* 248 N.L.R.B. 1212 (finding that local branches of company are allied with parent company because of large amount of cross-shipping of orders to common customers). In the instant case, Boich and Aloe agreed to produce a certain type of blended coal. This type of transaction is not enough to ally the two companies.

We hold that the Board's decision affirming the ALJ's finding that Boich was not a neutral employer because of its participation in the washing and blending operation with Aloe is not supported by substantial evidence.

### III.

To summarize:

Boich and Aloe maintain clearly separate management and control over labor relations. While they are both wholly owned subsidiaries of the same holding company, this in and of itself is not enough to establish that the two companies are so closely entwined as to be treated as a single entity. Their shared participation in a coal washing and blending process does not involve a large amount of coal; rather, it is a relatively minor arms-length business transaction for both companies. Taking these factors as a whole, Boich is a neutral employer under §§ 8(b)(4)(i) and (ii)(B) of the Act.

*Petition for review granted; case remanded with instructions.*