## Robert WILLIAMS, Plaintiff–Appellant,

v.

## Howard MOLPUS, et al., Defendants–Appellees.

### No. 97–2148.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 18, 1998.

Decided March 18, 1999.

Rehearing and Rehearing En Banc Denied April 30, 1999.*

* Judge Norris would grant rehearing for the   reasons stated in his dissent.

Barbara M. Harvey (argued and briefed), Detroit, MI, for Plaintiff–Appellant.

Patricia M. Morrow (argued and briefed), Roberto L. Mercado (briefed), Dean & Fulkerson, Troy, MI, for Defendants–Appellees Ryder Systems, Inc., Ryder Automotive Carrier Group, Inc.,

Complete Auto Transit, Inc., Commercial Carriers, Inc. and Transport Support, Inc.

Wayne A. Rudell (argued and briefed), Rudell & O'Neill, Dearborn, MI, for Defendants–Appellees General Drivers and Helpers Local No. 332 and Howard Molpus.

Before: MERRITT, NORRIS, and GILMAN, Circuit Judges.

GILMAN, J., delivered the opinion of the court, in which MERRITT, J., joined. ALAN E. NORRIS, J. (p. 369), delivered a separate dissenting opinion.

GILMAN, Circuit Judge.

After submitting the winning bid for the renewal of General Motors's yard and haul-away work at two of GM's plants in Flint, Michigan, Ryder Automotive Carrier Group, Inc. ("Ryder") assigned the yard work at both plants to Transport Support, Inc. ("TSI") and the haul-away work at both plants to Complete Auto Transit, Inc. ("Complete"). Both TSI and Complete are wholly-owned subsidiaries of Ryder. The union representing the employees of both subsidiaries then negotiated a rider to the national collective bargaining agreement. According to the rider, the employees of Complete (the company that had the previous contract for yard work at one of the GM plants in question) could transfer to TSI to perform yard work. Their seniority dates, however, would be "endtailed" after the current TSI employees.

Robert Williams, a long-term employee of Complete, filed a grievance with the Central–Southern Joint Arbitration Committee ("CSJAC"), the dispute resolution body established by the national collective bargaining agreement. He protested (1) the reassignment of Complete's yard work to TSI, and (2) the endtail provision. After his grievance was denied, Williams filed suit against the union as well as against Ryder, Complete, and TSI (the latter three being collectively referred to hereafter as "the Employers"). The dis-

trict court granted summary judgment in favor of all of the defendants. Williams appeals, claiming that he had raised genuine issues of material fact regarding the union's breach of its duty of fair representation and the Employers' breach of contract. Viewing all of the evidence in the light most favorable to the non-moving party, we conclude that the district court erred in granting summary judgment in favor of the defendants. We therefore REVERSE the district court's decision and REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

Between 1969 and 1992, Williams had been variously employed by Complete as both a haul-away driver and as a yard worker. In 1992, he was working as a haul-away driver at GM's Buick City plant. Complete employed over 200 workers in that year, some of whom performed the yard work at the Truck & Bus plant, another GM facility in Flint. During that time, TSI employed only nine workers. TSI was in charge of the yard work at the Buick City plant.

Local 332 of the International Brotherhood of Teamsters represented the employees of both Complete and TSI. Howard Molpus was their union representative. Molpus's son was one of the nine TSI employees.

In 1992, GM announced that it was accepting bids on all of its yard work and haul-away work at both the Buick City and the Truck & Bus plants. Ryder submitted the winning bid, thus continuing to perform the work that it had done under a prior contract with GM. Under the new contract, Ryder reassigned the yard work at both plants to TSI and the haul-away work at the two plants to Complete.

The unionized carhaul industry operates under a master collective bargaining agreement, known as the National Master Automobile Transporters Agreement ("NMATA"). Both Complete and TSI are

signatories to NMATA. Two specific provisions of NMATA are at issue in this appeal. The first is Article 5, which deals with seniority, specifically "terminal seniority." Terminal seniority applies to the employee's most recent date of employment at a specific terminal. Article 5 refers to two different methods of merging terminal seniority lists. One such method is endtailing (whereby transferring employees are placed at the bottom of a terminal seniority list, although they retain their company seniority dates for fringe benefits), and the other is dovetailing (whereby two or more merged seniority lists recognize the original terminal seniority dates of each employee). According to Section 2 of Article 5, dovetailing is the preferred method: "Terminal seniority rights for all employees covered by this Agreement shall prevail unless the Supplements or other provision of this Agreement provide specifically to the contrary." Section 8 of Article 5, however, states that "the above rules are intended solely as general standards," and that "the Employers, the Union and the National or Area Joint Arbitration Committees may mutually agree to such disposition of questions of seniority which, in their judgment, is appropriate under the circumstances."

The second NMATA provision at issue in this appeal is the Work Preservation Agreement ("WPA"), which deals with the reassignment of work. The 1991–1995 NMATA modified Article 33, adding a new WPA. This provision provides in pertinent part as follows:

> [T]he signatory Employer agrees that it will not … assign or divert work, operations or services presently performed by, or hereafter assigned to its employees to other business entities, owned and/or controlled by the signatory Employer, its parent, subsidiaries, or affiliates of the Employer not signatory to this Agreement.

Ryder signed the WPA as the parent corporation of the signatory employers, including both Complete and TSI.

After Ryder won the GM bid, TSI and the union negotiated a rider to NMATA, arranging a new incentive-based pay schedule for the yard work performed by TSI employees. The rider also provided that Complete employees could transfer to TSI to perform yard work at any time, without the usual limited window of opportunity to do so. Transferring Complete employees would retain their prior company seniority dates for purposes of fringe benefits, but their terminal seniority dates would be endtailed after the nine current TSI employees.

This rider was presented to and ratified by the TSI employees. The parties dispute whether the rider was ever presented to the Complete employees for ratification. Williams claims that although the Complete employees voted on whether they should have the opportunity to transfer to TSI, they were denied the opportunity to vote on the treatment of their seniority status upon transfer. The union's position is that the Complete employees only had a right to vote on the part of the rider that "affected" them, that being whether they should have the opportunity to follow their former yard work to TSI. It argues that unless and until Complete employees transfer to TSI, they are not "affected" by the endtail provision.

In August of 1992, the rider was presented to CSJAC, as required by Article 2 of NMATA. CSJAC approved the rider. The minutes reflect that the union representative, Howard Molpus, assured CSJAC that the rider had been ratified by the "affected members," without further specificity.

On September 1, 1992, Williams chose to transfer to TSI. Because of the rider's endtail provision, he was assigned a new terminal seniority date that placed him behind the existing TSI employees.

Later that month, Williams and two similarly situated Complete transferees filed a grievance, protesting the reassignment of the yard work to TSI, the requirement

that they transfer employment to TSI in order to continue performing yard work previously performed by Complete employees, and the loss of terminal seniority due to the transfer. The parties dispute the extent to which the union representative, Howard Molpus, assisted the transferees in presenting their grievances. After consideration, CSJAC denied Williams's grievance and upheld the rider, including the provision stating that the seniority of transferring Complete employees be endtailed behind the existing TSI employees.

Williams subsequently filed this lawsuit, claiming that (a) Ryder, Complete, and TSI should be considered as a single employer, (b) the Employers breached Articles 5 and 33 of NMATA, and (c) the union breached its duty of fair representation in negotiating and ratifying the TSI rider, as well as in failing to assist Williams in presenting his grievance. The district court granted summary judgment for both the union and the Employers, holding that (1) the single employer theory is irrelevant and unsupported, (2) CSJAC's finding that the negotiation of the endtail did not breach Article 5 of NMATA is binding, unless Williams can establish that the union breached its duty of fair representation, (3) CSJAC's finding that the transfer of work from Complete to TSI did not breach the WPA is binding, unless Williams can establish that the union breached its duty of fair representation, (4) neither the union nor its representative breached this duty, and (5) Williams was not "affected" by the TSI rider and did not, therefore, have a right to vote on its endtail provision prior to his transfer.

Williams appeals, claiming that he had presented genuine issues of material fact for trial, and that the district court improperly resolved reasonable inferences from these facts in favor of the union and the Employers rather than in his favor. He specifically alleges that the union breached its duty of fair representation in its misrepresentations to CSJAC, in its

negotiation of the endtail provision, and in its presentation of Williams's grievance. Williams also claims that the district court improperly dismissed his claims that Complete and TSI were part of a single employer, and that their agreements with the union violated NMATA.

## II. ANALYSIS

### A. Standard of review

We review *de novo* the district court's grant of summary judgment. *See Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### B. Breach of the union's duty of fair representation

#### 1. Duty of fair representation

 As stated by Justice Byron White in *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the leading case in this area of the law, a union's duty of fair representation includes "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." The duty extends to all of the union's

represented employees in all contexts of union activity, including contract negotiation and grievance processing. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 77, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (re-affirming the standard set forth in *Vaca* and extending it to the union in its negotiating capacity). There may be instances, however, when a union's decision favors some members over others, and the total satisfaction of all of the union members is not to be expected. *See Balowski v. UAW*, 372 F.2d 829, 834 (6th Cir.1967). Furthermore, even if an employee shows that the union breached its duty of fair representation, the employee must also prove that the union's acts "tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach." *Dushaw v. Roadway Express, Inc.*, 66 F.3d 129, 132 (6th Cir. 1995).

### 2. Williams's claims of breach

Williams cites numerous incidents which he claims constitute a breach of the union's duty of fair representation, particularly relating to the negotiation of the rider and the processing of Williams's grievance. Based on our review of the record, we conclude that these claims raise genuine issues of material fact that merit consideration by a jury.

#### a. The union's negotiation of the rider

Williams claims that the union made two material misrepresentations relating to the rider. First, he claims that the union misrepresented who in fact initiated the endtail provision. According to Williams, Molpus told the Complete employees that Ryder demanded the endtail as a condition of granting the unrestricted window that allowed Complete employees to transfer to TSI. Another Complete employee, Dallas Whitinger, also stated in his declaration that Molpus made such a representation to the Complete employees. Williams claims that Molpus's representation was untrue, citing to the deposition of Albert McCune,

Ryder's labor relations director, in which McCune stated that Ryder did not care whether the Complete employees were endtailed or dovetailed. Molpus's statement in his own deposition that TSI, rather than Ryder, demanded the endtail provision adds to the confusion regarding who in fact insisted on this provision.

Williams argues that the union was in fact the party responsible for initiating the endtail provision, and, because Molpus's son was a TSI employee, Molpus had a personal motive for doing so. An endtail provision would provide his son job security, whereas a dovetail provision might have resulted in his son's layoff. For the union to propose the endtail provision would favor nine of its represented employees to the potential detriment of over 200 others. Williams argues that if the provision was not demanded by either Ryder or TSI, then such favoritism of the TSI employees is a breach of the union's duty of fair representation. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953) ("[The union's] obligation to represent all members of an appropriate unit requires [it] to make an honest effort to serve the interests of all of those members, without hostility to any.").

Second, Williams argues that the union misrepresented who in fact had voted for the rider. Molpus stated to CSJAC that the "affected" employees had ratified the rider, possibly leaving the impression that the employees of both Complete and TSI had approved the same. According to Williams, this statement intentionally misled CSJAC into believing that the Complete employees had ratified the rider, whereas a material dispute exists as to whether these employees had in fact done so. He again alleges that Molpus misrepresented the vote because of his personal bias in favor of his son. Ryder responds that Molpus's statement that the "affected" employees had voted on the rider referred solely to the TSI employees.

Moreover, Williams claims that the TSI rider violated NMATA, sacrificing the seniority status of over 200 Complete employees in order to benefit nine TSI employees. The union, he argues, should either have refused to negotiate the rider or should have challenged the same, and its failure to take one course or the other was a breach of its duty of fair representation. The two provisions of NMATA that Williams claims were breached are the following:

(i) Williams claims that the rider violated Article 5 of NMATA. Section 2 of Article 5 generally requires the dovetailing of seniority, whereas Section 8 thereof allows for endtailing only upon the agreement of the union, the employer, and CSJAC. Williams claims that there was no legitimate reason for the union to agree to, much less propose, endtailing in this case. As previously mentioned, Molpus's justification for the endtail, and his explanation to the Complete employees, was that either Ryder or TSI demanded this provision. Ryder's labor relations director, however, testified otherwise, and stated that he knew of no other situation in which employees' seniority status was endtailed.

(ii) Williams contends that the diversion of work from Complete to TSI violated Section 33 of NMATA (the WPA), which he claims precludes the transfer or reassignment of work from one signatory employer to another. Williams argues that Molpus failed to either protest this diversion of work or inform the Complete employees of the violation. The union and the Employers, on the other hand, claim that there was no violation of the WPA because this provision was intended to prevent the transfer or reassignment of work to other companies that are *not* signatories to NMATA, or to non-Teamster subsidiaries owned or controlled by the signatory parent company. Ryder further asserts that it supported the rider because it was necessary in order to competitively bid and retain the GM yard work for bargaining

unit members. According to Ryder and the union, both the TSI employees and the Complete employees received some benefit—namely the retention of seniority status and the ability to transfer, respectively. *See Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) (holding that the union did not breach its duty of fair representation in negotiating a deal which favored some members of the same bargaining unit over others).

Moreover, Molpus stated that his inaction was justified given his understanding from company representatives that Complete's workers' compensation rates were higher than TSI's. Based on this understanding, he believed that a bid for yard work by Complete would be at a competitive disadvantage to a bid made by TSI. The Employers' discovery responses, however, revealed that "Complete and TSI were self-insured employers for workers' compensation purposes ... [and,] [t]herefore, no workers' compensation insurance rates are involved." Williams argues that Molpus offered no other legitimate reason for the union to support this work reassignment, and again suggests that Molpus failed to challenge the contractual violation because he in fact initiated the rider for the benefit of his son.

### b. The union's processing of Williams's grievance

"An action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith." *Balowski v. UAW*, 372 F.2d 829, 834 (6th Cir.1967). In order to prove a breach, the complaint must allege more than simply conclusory statements. "In particular plaintiffs must make a showing that the action or inaction of the [union] representative complained of was motivated by bad faith...." *Id.* at 835 (internal quotation marks omitted). Moreover, a union does not have to process a grievance that it deems lacks merit, as long as it

makes that determination in good faith. *See Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335, 1341 (6th Cir.1975).

Williams claims that the union failed to properly process his grievance. He alleges that Molpus dealt with the grievance in a "perfunctory" manner, failed to advise him of the potential violation of the WPA, and neglected to provide him with a copy of the TSI rider during the grievance proceeding. Williams also argues that, contrary to customary practice, Molpus failed to present the grievance to the committee, but rather left it to Williams to handle his own case. He further argues that Molpus intentionally misled CSJAC into believing that the Complete employees had ratified the rider, stating that the "affected" employees voted on the rider, and again asserts Molpus's personal bias in favor of his son at TSI.

In response, Ryder and the union argue that Molpus's neutral position at the hearing was appropriate, and that Williams had a full opportunity to present his grievances. They point out that Williams himself stated in his deposition that he knew of no other position that Molpus could have taken at the hearing, that Williams was aware of the NMATA provisions, and that he never sought information from Molpus regarding the WPA.

### 3. Was summary judgment properly granted?

In examining these issues, a review of this circuit's only other published opinion involving the union's duty of fair representation in the context of an endtail provision is instructive. In *Ackley v. UAW,* 910 F.2d 1295 (6th Cir.1990) ("*Ackley I*"), this court initially held that the union breached it duty of fair representation based upon the union's hostility toward those represented employees whose seniority status was endtailed. Upon its grant of the union's motion to rehear, however, the same panel vacated its earlier opinion. *See Ackley v. UAW,* 948 F.2d 267 (6th Cir.1991) ("*Ackley II*"). The court held that the

evidence was insufficient to satisfy the requirements set forth in the intervening Supreme Court decision of *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), holding that "what a union does in its negotiating capacity is not actionable absent proof of bad faith, discrimination, or behavior so unreasonable as to be irrational." *Ackley II,* 948 F.2d at 267.

■ In contrast to the facts in *Ackley,* Williams has presented the following evidence that, if found credible by a jury, would support a finding that the union acted in bad faith or with discriminatory intent, thereby satisfying the requirements set forth in *O'Neill:* (1) seniority status is rarely endtailed, as evidenced by Article 5 of NMATA, (2) the endtailing was proposed by the union, not demanded by the Employers, (3) CSJAC's decision was likely based upon a misrepresentation by the union of who had approved the rider, (4) the union made a material misrepresentation to the Complete employees that Ryder had demanded the endtail provision, (5) the rider favored nine TSI employees over 200 Complete employees, and (6) one of the TSI employees is the union representative's son.

Because Williams has presented genuine issues of material fact regarding the union's breach of its duty of fair representation, and because many of his claims depend upon determinations of credibility, we conclude that the district court erred in granting of summary judgment in favor of the union.

### C. Breach of NMATA by the Employers

As previously set forth in Part B.2.a. above, Williams argues that the rider violated both Article 5 of NMATA (dealing with seniority rights), and the WPA (Article 33 of NMATA). He thus contends that the rider, in addition to evidencing a breach of the union's duty of fair represen-

tation, also constitutes a breach of contract by the Employers.

■ Williams's claims on these issues would normally be foreclosed by CSJAC's rulings adverse to his position. In general, an arbitrator's decision is binding as long as it is rationally drawn from the essence of the collective bargaining agreement. *See Dallas & Mavis Forwarding Co., Inc. v. General Drivers, Local Union No. 89*, 972 F.2d 129, 134 (6th Cir.1992) (holding that the arbitrators' decision that a vehicle delivery company violated provisions of the collective bargaining agreement was binding because it was rationally drawn from the essence of the agreement). The district court noted, however, that the arbitration committee's decision is not binding if the union breached its duty of fair representation in connection with the arbitration proceeding. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) ("[I]t is quite another matter to suggest that erroneous arbitration decisions must stand even though the employee's representation by the union has been dishonest, in bad faith, or·discriminatory; for in that event error and injustice of the grossest sort would multiply."). It therefore held that "[Williams] could still succeed on his claim should he prove that the union breached its duty of fair representation."

■ Because we are remanding the issue regarding the alleged breaches of the union's duty of fair representation, we will also remand the issue regarding the alleged breaches of contract by the Employers. If the jury on remand finds that the union did not breach its duty, then CSJAC's decisions regarding the NMATA claims are binding. If, however, the jury concludes that the union did breach its duty of fair representation, then CSJAC's decisions are not binding, and the district court will have to reconsider Williams's NMATA claims against the Employers.

## D. Single employer status

■ Williams further argues that the district court erred in dismissing his claim that Complete and TSI are part of a single employer. Even though TSI volunteered to assume liability for the acts of any and all of the Employers, Williams submits that his single employer claim is still relevant. In support of his position, Williams argues that Ryder created, merged, extinguished, and reorganized its carhaul subsidiaries with such frequency as to establish that the only enduring entity was Ryder itself. If such were indeed the case, then there would necessarily be only one group of employees and only one seniority list. Consequently, an endtail provision, which would require two distinct groups of employees, would be impossible. Williams points out that although a jury could find that the endtail provision violated Article 5 of NMATA without also finding that Complete and TSI were a part of a single employer, such a violation would be obvious if the jury found that Ryder was the sole employing entity.

■ A court may consider the following factors in evaluating a claim of single employer status: "(1) common ownership; (2) common management; (3) centralized control of labor relations; and (4) interrelationship of operations." *Boich Mining Co. v. NLRB*, 955 F.2d 431, 434 (6th Cir. 1992). All of the factors need not be present. *See id.* In order to make this showing, Williams tendered what he claims is "a veritable mountain of evidence," including centralized control of labor relations, personnel, operations, licensing, financial management, and interlocking corporate officers and directors. Ryder responds that this argument is either irrelevant because of TSI's offer to assume full liability, or, in the alternative, that Williams has failed to prove that these entities are a single employer.

Because a finding that Complete and TSI are part of a single employer would support Williams's allegation of a breach of NMATA, TSI's offer to assume liability for

all of the Employers does not render Williams's claim irrelevant. Upon careful review, we conclude that Williams has presented sufficient evidence to avoid summary judgment on this issue. The district court therefore erred in dismissing his single employer claim as a matter of law.

### E. Failure to exhaust internal union remedies

 The union argues that Williams's failure to exhaust his internal union remedies bars his claims on appeal. The general requirement that a grievant must exhaust his or her internal union remedies, however, is excused if the union breaches its duty of fair representation. *See Hines*, 424 U.S. at 567, 96 S.Ct. 1048 ("The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled though contractual grievance procedures . . ."). If the jury finds upon remand that the union breached its duty of fair representation, then Williams is not barred by his failure to exhaust the union's internal remedies.

### III. CONCLUSION

After viewing all of the evidence and drawing reasonable inferences in the light most favorable to the non-moving party, we conclude that Williams has raised genuine issues of material fact that preclude the grant of summary judgment against him. We therefore REVERSE the decision of the district court and REMAND for further proceedings consistent with this opinion.

ALAN E. NORRIS, Circuit Judge, dissenting.

As the majority acknowledges, "the final product of the bargaining process may constitute evidence of a breach of duty [of fair representation] only if it can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citations and internal punctuation omitted). Given this exacting requirement, I share the view of the district court that plaintiff has not come forward with sufficient evidence to withstand summary judgment on his duty of fair representation claim. *Williams v. Molpus*, No. CIV.A.93–CV–40131–FL, 1997 WL 715455 (E.D.Mich. August 27, 1997).

I respectfully dissent.