**Deborah DANTON, Plaintiff,**

v.

**BRIGHTON HOSPITAL & International Brotherhood of Teamsters, Local 337, Defendants.**

**Civil No. 07–11071.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 5, 2008.

Kenneth J. Hardin, II, Nicole L. Thompson, Hardin Assoc., Bingham Farms, MI, for Plaintiff.

Karen B. Berkery, Lori N.K. Adamcheski, Kitch, Drutchas, Detroit, MI, Kevin J. O'Neill, Rudell and O'Neill, Dearborn, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANT INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 337's MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT BRIGHTON HOSPITAL'S MOTION FOR SUMMARY JUDGMENT

JOHN FEIKENS, District Judge.

This opinion stems from the events of Plaintiff Deborah Danton's (Danton) termination from Defendant Brighton Hospital. Danton accuses Defendant International Brotherhood of Teamsters, Local 337 (the Union) of failing to fulfill its duty of fair representation to her. Danton also accuses Defendant Brighton Hospital of breaching the collective bargaining agreement. In response, both Defendants brought motions for summary judgment. For the reasons stated below, I GRANT both the

Union's and Brighton Hospital's motions for summary judgment.

## I. FACTUAL BACKGROUND

### A. Termination and the events leading up to it

Brighton Hospital is one of the leading facilities in Michigan for treating people with substance abuse problems. The nature of these problems go deeper than merely the substances abused. 80% of the patients have mental health issues as well. On May 18, 2004, Brighton Hospital hired Danton as a therapist in its rehab program. At about that same time, Danton became a member of the Union.

Danton characterizes her employment at Brighton as successful, citing to three positive job performance evaluations. She admits that on October 19, 2005 she received a one-week suspension for neglecting a patient. Although she disagreed with the grounds for the suspension and filed a grievance, the suspension was maintained. Under the terms of the collective bargaining agreement (CBA) this was a Level III offense. The first Level III offense calls for a five-day suspension; the second calls for termination.

On September 14, 2006 Danton was again accused of neglecting a patient. Specifically, an "Employee Corrective Action Report" stated that on September 6, 2006 Danton did not contact a new patient when she was supposed to; did not contact her supervisor appropriately regarding this missed contact; and that this failure left the patient "in distress." Danton refutes this, claiming she met with the patient for a half session, that he was not in distress when she left, and that although she did not call her supervisor's cell phone, as was customary, Danton left a message

explaining her absence on her supervisor's office phone. Further Danton explains that the reason she left the session early was to address her mother's health crisis.

The report also states that on September 13, 2007, Danton was late arriving at a patient's acupuncture therapy session that she was to administer. Danton disputes that this was neglect of a patient because the patient wrote that she was satisfied with the session and although she was late, Danton completed the session.

### B. Grievance Proceedings

Danton alleges a litany of events that she calls "complaints against her union's performance, or failures to perform, as to the processing of her grievance." They include the following:

- Danton was not able to speak with the Union business agent who acted on her behalf, prior to the hearing in which the Union decided not to proceed to arbitration.[1]

- The union business agent said nothing on her behalf other than a question relating to Danton's work start time.

- Danton asked this agent if she could consult with a Union attorney, and the agent did not respond.

- This hearing was not held within 30 days of the beginning of her grievance which in turn prejudiced her case by giving the employer more time to prepare.

- Danton asked the Union's representatives if she could bring her own attorney to this hearing and was told that she could not.

- The Union steward did not appear at the hearing and could not speak on Plaintiff's behalf

---

1. This meeting is Step 3 of the arbitration process in which the person who filed the grievance meets with a Union hearing board

who then recommend to the executive board of the Union whether to arbitrate or not.

• Danton states there was a general lack of support and direction from the Union The Union's representation did not address the terms of the CBA or whether beginning a session later than scheduled was "neglect of a patient."

• The Union's representation consisted merely of holding hearings.

Aside from these specific allegations, Danton claims the Union failed to properly interpret the CBA, particularly Article XIII which states a warning notice may not stay in effect for more than 12 months; Article XIX which explains the different levels of punishment for work rule violations; and the "troubled employee program." This is a program that allows employees experiencing severe family problems to ask for leave.

The Union cites to Plaintiff's initial disciplinary action. On October 19, 2005, Brighton Hospital suspended her for five days for neglect of a patient. The specifics were that she did not meet or treat a patient for the necessary amount of time, had long periods of time of no contact with a patient, and that she failed to include the patient's family in treatment or counseling sessions. Less than a year later, Brighton Hospital terminated Plaintiff for her second offense of neglecting a patient, within a year of the first offense.

Specifically, the allegations surrounding this second offense revolve around a patient who was admitted on September 5, 2006. The next day, Plaintiff did not complete her first session with the patient and left without informing her supervisor so another therapist could be assigned to the patient. On September 7, Plaintiff did not report to work or inform the staff of her opinions on what was necessary for the patient's treatment. A week later on September 13, 2006, Plaintiff showed up for work late and began a patient's acupuncture treatment 50 minutes late. The next

day she was terminated. On September 20, 2006, Plaintiff filed a grievance.

The Union claims that it met with Plaintiff and Brighton Hospital on October 5 to discuss Plaintiff's termination and grievance. At all times, she was represented by her union steward and her union business agent. Plaintiff in her deposition admits that she drafted her grievance and included everything she wanted it to say, and that she maintained contact with her union steward. At the October 5 meeting, Brighton Hospital refused to reinstate Plaintiff; the Union then informed Brighton Hospital that the grievance would proceed to the Union's arbitration grievance panel.

The grievance panel is a fact finding board which reports to the Union's Executive Board on whether to proceed to arbitration on the grievance. According to the Union, the purpose of the grievance panel is to hear from the employee/grievant and not her union steward or the Union's business agent. The reason being that the employee experienced the facts and understands them. On November 14, the parties met with the grievance panel. Plaintiff was able to present her facts, and why she believed termination was unwarranted. Plaintiff stated in deposition that she understood that her grievance would not automatically proceed to arbitration.

In a letter dated November 28, 2006, the Union informed Plaintiff that her grievance would not proceed to arbitration. According to Pat Dougherty who was a part of the grievance panel, the decision not to proceed was based on several reasons, including (1) the fact that she knew the patient policies that she violated on September 6 and willingly did not follow them; (2) that Plaintiff admitted she was not focused on patient needs; (3) that Plaintiff admitted she did not contact her supervisor by cell phone when she left the patient

counseling session early even though she knew that policy mandated that she contact her supervisor by cell phone; and (4) there was no paperwork on what the next step in therapy should be. This is eminently important because Plaintiff conducted the initial meeting and analysis of the patient. Her observations were supposed to determine the type of problems that the patient endured, whether they were drug or alcohol related and whether depression or suicide were issues with the patient.

Based on the Plaintiff's recollection of these events, the Union concluded that this was a Level III neglect of patient situation and that there would be no point in continuing in this process. Further, since it was Plaintiff's second Level III offense within one year, the CBA dictated that Brighton Hospital could terminate her. Finally, the Union concluded that Plaintiff's September 13th lateness to a patient appointment was a Level III violation, which would have meant a third Level III violation within the past year.

## II. ANALYSIS

### A. Defendant Union's Motion for Summary Judgment

### 1. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For a claim to survive summary judgment, the nonmovant must offer

more than a mere scintilla of evidence as to the material facts. *Anderson v. Liberty Lobby. Inc.* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant's burden is satisfied where there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### 2. Breach of Duty of Fair Representation

■ In presenting a claim that the Union breached its duty of fair representation, plaintiffs cannot rely on conclusory statements. *See Williams v. Molpus,* 171 F.3d 360, 366 (6th Cir.1999). Instead, Plaintiff must present specific facts that support a finding "that the union's actions or omissions during the grievance process were **arbitrary, discriminatory, or in bad faith.**" *Garrison v. Cassens Transport,* 334 F.3d 528, 538 (6th Cir.2003) (emphasis added).

■ The Union's decision on how to pursue a grievance and, ultimately, not pursue a grievance are entitled to deference from this Court, *Driver v. United State Postal Service,* 328 F.3d 863, 869 (6th Cir.2003), and are not actionable if done in good faith. *Williams,* 171 F.3d at 366–67. Union actions in these matters are not considered arbitrary unless they are "so far outside a wide range of reasonableness as to be irrational." *Driver,* 328 F.3d at 869. Mere negligence, error or flaws in logic and judgment cannot sustain a showing of arbitrary action by the Union. *Garrison,* 334 F.3d at 538. An unwise or even an unconsidered decision by the union is not necessarily irrational. Instead, Plaintiff must present to this Court material facts that show the Union's actions were "wholly irrational." *Id.*

### 3. Application

■ Central to this issue is the work that Plaintiff performed at Brighton Hospital. As a therapist, Plaintiffs responsibilities involved patients who sought assistance with serious, potentially life threatening problems. As such her duties were much greater than one might find in other lines of work.

Plaintiff may very well have been frustrated by the results of the grievance process. She complains that there was not enough investigation or that she was left on her own without enough assistance. In other words, Plaintiff did not like the end result of this process which was denial of her grievance by the Union. The court can sympathize. There may have been other approaches the Union could have taken in reviewing her termination. This may not have been the Union's "best effort" of representation. But this Court is not in a position to grade the efforts of the Union, as much as it is required to pass judgment on the motivations of the Union when it represented Plaintiff in the grievance process, and ultimately denied her the opportunity to proceed to an arbitration panel.

■ What I fail to find in the record are relevant facts that show the Union acted out of malice, discriminatory animus, or bad faith against Plaintiff. As to whether the Union's actions were arbitrary, the record indicates they were not arbitrary, or better put, "wholly irrational." The Union gave Plaintiff the benefit of interacting with her Union steward and business agent as she prepared to meet with the Union's grievance committee. Although these two were not present with Plaintiff at the grievance committee meeting, it is not extraordinary. The Union explains that the grievance committee meeting is a forum for the Plaintiff to explain her actions, and not necessarily for the union steward or business agent to speak. This is a reasonable explanation, and at the very least, it is not so unreasonable that it is irrational or arbitrary. *See Air Line Pilots Association v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (union's conduct is arbitrary only if the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational). The Union's conduct can exhibit poor judgment and negligence but that does not necessarily amount to arbitrary action. *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

Ultimately, Plaintiff tries to minimize the events of her dismissal. According to Plaintiff, her September 6 incident was nothing more than a completed half session with a patient who was not in distress. The Union views it differently. To the Union this is a hospital setting that deals with individuals on the brink of disaster or death. These patients are at a low point in their lives at which they have admitted they need professional help. It was at this point, that Plaintiff failed to treat her patient and then Plaintiff failed to adequately notify her supervisor so the patient's needs could be addressed. Given the facts of this case, there is nothing to indicate the Union's .decision that it could not defend Plaintiffs actions was made in bad faith, in a discriminatory fashion or arbitrarily.

As such, I GRANT Defendant's Motion for Summary Judgment and DISMISS it from this Complaint.

### B. Defendant Brighton Hospital's Motion for Summary Judgment

Plaintiff filed with this Court a hybrid case under the section 301 of the Labor Management Relations Act (LMRA). That is, Plaintiff in her Complaint claims Brighton Hospital breached the CBA *and* the Teamsters Union breached its duty of

fair representation. This is uncontested by Plaintiff Danton.

 In situations such as this, the law is clear that Plaintiff must demonstrate both positions. If she fails to demonstrate one of the positions, she cannot succeed against either party. *See Higgins v. International Union, Security, Police, Fire Professionals of America,* 398 F.3d 384, 387 (6th Cir.2005). Given the fact that Plaintiff failed in her claim against the Union, Plaintiff must also lose on her claim against Brighton Hospital. As a matter of law, I GRANT Defendant Brighton Hospital's Motion for Summary Judgment.

## III. CONCLUSION

For the reasons stated, I GRANT summary judgment to both Defendants and DISMISS them from this case.

**IT IS SO ORDERED.**