Steve John SMOLINSKY, et al., Plaintiffs,

v.

IUE–CWA AUTOMOTIVE CONFERENCE BOARD, et al., Defendants.

No. 4:01–CV–640.

United States District Court, N.D. Ohio, Eastern Division.

Jan. 9, 2002.

Alan D. Wenger, Harrington, Hoppe & Mitchell, Youngstown, OH, for Steve John Smolinsky, III, Ken Runyon, Trevor Richman, Shawn Phillips and Mike Kish, Plaintiffs.

Alexia F. McCaskill, IUE–CWA, Washington, DC, Theodore E. Meckler, Cleveland Heights, OH, John Q. Lewis, Robert S. Walker, Jones, Day, Reavis & Pogue, Cleveland, OH, for IUE–Delphi Conference Board, IUE–717, Delphi Automotive Systems, LLC, Defendants.

## OPINION

GWIN, District Judge.

On November 9, 2001, Defendants IUE–CWA Automotive Conference Board ("Conference Board") and IUE–CWA Local 717 ("Local 717") (collectively "the Union") and Defendant Delphi Automotive Systems Corporation ("Delphi") moved for summary judgment [Docs. 29, 31]. Plaintiffs Steve John Smolinsky, Mike Kish, Shawn Phillips, Trevor Richman, and Ken Runyon oppose the motions. For the reasons discussed below, the Court grants the defendants' motions for summary judgment.

## I. Background

The plaintiffs bring a "hybrid" breach of contract/fair representation claim under § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185 (2001). They allege that Delphi breached its collective bargaining agreement and the Union breached its duty of fair representation. Specifically, the plaintiffs say Delphi and the Union made a decision to partially rescind a settlement agreement admitting the plaintiffs into an apprentice program. The plaintiffs say this decision continued them in their positions but eliminated six months of their skilled trades seniority. The plaintiffs say the defendants arbitrarily overturned the settlement agreement without any notice and refused to consider pursuing a grievance with the Union.

The defendants deny Delphi breached its collective bargaining agreement or the Union breached its duty of fair representation. Delphi says the partial recision of the settlement agreement conformed with the collective bargaining agreement. In addition, Delphi says the parties had every right to negotiate the change in the plaintiffs' skilled trade seniority date especially since the local settlement agreement conflicted with the national collective bargaining agreement.

The Union says it appropriately rescinded the settlement agreement to resolve a dispute between plaintiffs and other mem-

bers disadvantaged when the plaintiffs were given an improper trade seniority date. The Union says it properly investigated and decided the issue by interpreting the national collective bargaining agreement. Furthermore, after partially rescinding the settlement agreement, the Union says it did not act arbitrarily or in bad faith by refusing to pursue a grievance against Delphi because the Union concurred in the decision that affected the plaintiffs' seniority.

Many of the underlying facts of this case are not in dispute. The relevant collective bargaining agreements are the November 11, 1993, agreement between the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO, and General Motors Corporation [1] ("1993 CBA") and the November 14, 1999, agreement between Delphi and the IUE–CWA ("1999 CBA").

The Conference Board is a delegate of the IUE–CWA for purposes of collective bargaining and contract administration. Local 717 is an affiliated local of the IUE–CWA and represents Delphi employees at the Delphi facility in Warren, Ohio.

Smolinsky, Phillips and Richman began working for General Motors/Delphi in 1993. Kish and Runyon began working for General Motors/Delphi in 1994. All five plaintiffs were "seniority" employees.

The plaintiffs applied, tested, and interviewed for admission into Delphi's 1995 skilled trades apprentice program.[2] Mr.

Runyon scored a 65 in the competitive testing and interview process. Smolinsky scored a 64. Phillips, Richman and Kish all scored 63.

The 1993 CBA required seniority employees be selected for apprentice positions ahead of any lower-scoring, non-seniority applicants. To the extent seniority employees did not have higher scores, the apprentice committee then selected applicants into the apprentice program at a ratio of no less than two seniority employees for every non-seniority applicant selected.

On June 5, 1996, General Motors indentured a class of six skilled trades apprentices. In selecting the final two apprentices, the local apprentice committee accidentally selected two non-seniority applicants with final raw scores of 63 instead of Plaintiffs Runyon (65) and Smolinsky (64). The parties agree the error was accidental.

On December 18, 1995, Local 717 officials Michael O'Donnell and Bill Wilson and Delphi representatives Rich Schuler and George S. Mayes, Jr., signed a Memorandum of Settlement ("1995 settlement agreement") correcting Smolinsky and Runyon's omission from the apprentice program.

Under the 1995 settlement agreement, Smolinsky and Runyon were admitted into the apprentice program and given 30 days back pay. Plaintiffs Richman, Kish and Phillips were also admitted into the ap-

---

1. Delphi was formerly General Motors Corporation and IUE–CWA was formerly the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO.

2. The skilled trades apprentice program requires applicants to take an apprentice exam, and, if they score high enough, submit to an interview. The test and interview scores are then combined to form a final raw score,

which is used to rank individuals on a final applicant list. From this list, individuals with the highest scores are selected into the apprentice program. The apprentice program permits seniority employees (i.e., present employees who are union members such as the plaintiffs) and non-seniority applicants (i.e., individuals not currently working for Delphi) to seek positions in the program.

prentice program because they had equivalent scores to the non-seniority applicants hired. Smolinsky, Runyon, Richman, and Phillips's apprentice indenture date was December 25, 1995, while Kish's indenture date was January 2, 1996. The indenture date is important because the 1993 CBA sets the seniority date of graduating apprentices as the apprentices' indenture date. Important to this case, an additional provision of the 1995 settlement agreement adjusted the plaintiffs' skilled trade seniority date to June 5, 1995, once they completed their apprenticeships.[3]

The individuals who signed the 1995 settlement agreement did not inform or consult national representatives of Delphi concerning the indenturing mistake or the settlement agreement. The defendants say the plaintiffs were unaware of the error or the existence of the settlement agreement until Michael O'Donnell informed them in December 1995.

In May 2000, the plaintiffs completed their apprenticeship training and had their indenture dates adjusted backward to June 5, 1995. Between June 5, 1995 and December 18, 1995, Delphi hired approximately thirty journey persons from the outside. The skilled trades seniority dates for these journey persons are the dates Delphi employed them.

In May 2000, a journey person adversely affected by the adjustment of the plaintiffs' indenture dates filed a grievance. The grievance was appealed and denied. In June 2000, approximately thirty skilled trade employees complained by letter to Local 717 officials about the plaintiffs' adjusted skilled trades seniority dates. They complained because the grant of the earlier skilled trades seniority dates placed them at a disadvantage.

Local union officials contacted Harry Bogan, the lead union representative on the joint union-management National Skilled Trades Apprentice Committee, and requested the Conference Board's position on the situation. Mr. Bogan investigated by speaking to local and national union officials. None of the national level officials had heard of or approved the 1995 settlement agreement. Bogan did not speak to any of the union or management officials who had agreed to the 1995 settlement agreement, the plaintiffs, or the individuals who had lodged a complaint with Local 717 regarding the 1995 settlement agreement.

Based on his investigation, Bogan concluded the 1995 settlement agreement was improper because it violated the 1993 and 1999 CBAs.[4] Furthermore, Bogan concluded a local agreement like the 1995 settlement agreement could not alter the provisions of the national 1993 and 1999 CBAs. Bogan concluded the section of the 1995 settlement agreement adjusting the plaintiffs' skilled trades seniority dates was invalid because national union and management representatives should have resolved that issue or, at the very least, been asked to approve the 1995 settlement agreement.

---

3. The skilled trades seniority date affects an employee's priority for shift preferences, job positions, and, occasionally, rights to overtime. An employee's retirement date, retirement benefits and entitlement to vacation are not affected by a skilled trades seniority date, but rather are determined by an employee's plant seniority, which is not at issue in this case.

4. Specifically, Bogan felt the plaintiffs' adjusted indenture dates violated the provisions of document 35. Document 35 was attachment to the 1993 and 1999 CBAs. The document allowed an individual selected to the apprentice program but who had his or her entry into the program delayed for one of seven specific reasons to retain their indenture date as the date the person would have originally been placed in the program.

Bogan discussed the situation with Mark Winfield, his management counterpart on the National Skilled Trades Apprentice Committee. Winfield investigated on Delphi's behalf and reached an identical conclusion. In September 2000, Bogan and Winfield agreed to void the provision of the 1995 settlement agreement changing the plaintiffs' date of indenture to June 5, 1995. Bogan and Winfield did not alter any other part of the 1995 settlement agreement.

Bogan sent a letter to Robert Sutton, Local 717's Shop Chairman, informing him of the decision. In October 2000, members of Local 717 met with the plaintiffs and explained Bogan's decision and answered the plaintiffs' questions. In January 2001, Bogan met with the plaintiffs in Warren and discussed the seniority adjustment decision. At this meeting, Bogan told the plaintiffs that the Union's decision on the matter was final.

After the January meeting, the plaintiffs asked Terry Gruver, Sutton's assistant, about filing a grievance over the seniority adjustment. Bogan told Gruver a grievance was not appropriate because the Union agreed with Delphi's conclusion in the matter. The Union never pursued a grievance on behalf of the plaintiffs.

On March 16, 2001, the plaintiffs filed their complaint. In Count 1, the plaintiffs say the Union breached its duty of fair representation by engaging in illegal, wrongful, discriminatory, and arbitrary misconduct. In Count 2, the plaintiffs say the defendants' actions violated the collective bargaining agreements between the parties. Finally, in Count 3, the plaintiffs say the defendants conduct was so egregious as to warrant punitive damages.

The Court now considers the defendants' summary judgment motions below.

## II.  Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996) (internal quotations omitted).

## III.  Analysis

The plaintiffs bring a "hybrid" suit under Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, which states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to citizenship of the parties.

■ Such a "hybrid" claim requires the plaintiffs to prove Delphi breached its collective bargaining agreement and the Union breached its duty of fair representation. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The plaintiffs' burden of proof for their claim against Delphi and the Union is interdependent. *Id.* at 164–65, 103 S.Ct. 2281. "Unless [plaintiff] demonstrates both violations, he cannot succeed against either party." *Bagsby v. Lewis Bros. Inc.,* 820 F.2d 799, 801 (6th Cir.1987); *see also DelCostello,* 462 U.S. at 164–65, 103 S.Ct. 2281; *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 583–84 (6th Cir.1994). Thus, to prevail against either the Union or Delphi, plaintiffs must prove Delphi breached the collective bargaining agreement and the Union breached its duty of fair representation. The Court looks at each issue in turn.

### A.

The plaintiffs fail to raise a material issue of fact regarding Delphi's alleged breach of the collective bargaining agreement.

■ Employers and unions may enter binding agreements concerning union members' seniority rights. *See Chrysler Workers Assoc. v. Chrysler Corp.,* 834 F.2d

573, 582 (6th Cir.1987) ("Unions under NLRA have broad authority to engage in binding collective bargaining with respect to 'pay, . . . hours of employment, or other conditions of employment.' ") (citing 29 U.S.C. §§ 157, 159); *see also Ford Motor Co. v. Huffman,* 345 U.S. 330, 338–39, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

Several provisions of the 1993 and 1999 CBAs are at issue. The relevant provisions are the same in both agreements.

The plaintiffs say Delphi breached paragraph 67(b)(5)(a) of the 1993 CBA by not appointing the correct individuals to the apprentice program. In relevant part, the paragraph says:

When apprentices are selected, such selections shall be on the basis of at least two from the seniority employee applicant list for every one selected from the other list in descending order of total points scored in accordance with the Apprentice Selection Procedure . . .

All parties agree Runyon and Smolinsky were mistakenly left out of the June 1995 apprentice class. The defendants say the mistake was not a breach of the 1993 and 1999 CBAs because paragraph 67(b)(5)(a) has nothing to do with the apprentices' skilled trade seniority dates, the issue at the heart of the plaintiffs' complaint.

In addition, the defendants say other provisions of the 1993 and 1999 CBAs required them to partially rescind the 1995 settlement agreement in order to uphold the national CBAs. Document 35, an attachment to the 1993 and 1999 CBAs, describes seven circumstances in which seniority dates may be adjusted. A mistake by the apprentice selection committee is not one of listed reasons. The document allows a maximum seniority adjustment of twenty-one days for those seven circumstances.[5]

---

5. In its entirety, Document 35 reads:

During the course of the discussions lead-

The defendants also point to the following paragraphs of the 1993 and 1999 CBAs:

(42) All written local seniority agreements and written modifications or supplements thereto shall be subject to the approval of the Industrial Relations Staff of the Corporation and the International Union.

. . . .

(72) Upon graduation or transfer to another classification, the seniority of the apprentice shall start from the date of the Apprentice Training Agreement or *the apprentice's* plant seniority date established pursuant to Paragraph 29, whichever is later.

. . . .

(104) No provisions of any local agreements between local Plant Managements and Shop Committees therein shall supersede or conflict with any provisions of this Agreement unless a change to or waiver of specific provisions of the National Agreement or Exhibits attached thereto for a particular plant location(s) is mutually agreed to and approved in writing by both the Industrial Relations Staff of the Corporation and the International Union.

(emphasis in original).

█ The plaintiffs evidence is insufficient to demonstrate a material issue of fact concerning Delphi's alleged breach of the 1993 and 1999 CBAs. While there is no dispute the apprentice selection committee improperly passed over Smolinsky and Runyon for apprenticeships, the relevant issue in this case is the adjustment in the plaintiffs' seniority rights. The plaintiffs' complaint states Delphi breached its collective bargaining agreement by partially rescinding the 1995 settlement agreement, yet they have made no effort to show how the defendants' actions in September 2000 constituted a breach.

Paragraph 72 of the 1993 and 1999 CBAs establishes an apprentice's indenture date ("date of the Apprentice Training Agreement") as his or her seniority date. The defendants' recision of the 1995 settlement agreement merely returned the plaintiffs' skill trade seniority dates to December 25, 1995, for Smolinsky, Runyon, Richman, and Phillips and to January 2, 1996, for Kish, the actual days the men were indentured.

At the same time, paragraphs 42 and 104 of the 1993 and 1999 CBAs establish that local agreements cannot supercede the national CBA and any local agreement modifying seniority must get the approval of national representatives of Delphi and the Union. There is no evidence suggesting the 1995 settlement agreement signees sent it to Delphi or the Union's national representatives for approval.

ing to the current National Agreement, the Corporation and the IUE discussed situations where the placement in the program of a selected apprentice or upgrader applicant is delayed. The Union emphasized that problems resulted when such a delay occurs due to (1) an approved leave of absence for jury duty, (2) approved vacation time off *pursuant to the Vacation Section,* (3) a sick leave of absence under the provisions of Paragraph (90) or (91), (4) the short term needs of Local Management such as the necessity to train a replacement for the person who has been selected, or (5) an absence which qualifies the employee for bereavement pay, (6) paid absence allowance time off *under the provisions of prior agreements,* (7) short term military duty. The Corporation has advised the Union that if an opening occurs and the person selected to fill the opening is delayed for one of the reasons specified above and the delay is for not more than 21 calendar days, that person's date of entry for seniority purposes shall be the date *the selected applicant* would have originally been placed in the opening.
(emphasis in original).

Instead, the plaintiffs suggest Bogan and Winfield did not have the authority to make the September 2000 agreement that adjusted the plaintiffs' skilled trades seniority dates. The plaintiffs say the National Skilled Trades Apprentice Committee should contain three members from both management and the Union. At the time of Bogan's investigation, only Bogan and Winfield were on this committee.

Even taking these facts in the light most favorable to the plaintiffs, there is no material issue of fact in dispute. While the National Skilled Trades Apprentice Committee may have had only two of its possible six members, the plaintiffs present no evidence challenging Bogan and Winfield's authority, as representatives of the union and management, to act as the committee. Contrary to the plaintiffs' argument, Bogan and Winfield did not negotiate and implement a new policy under the 1993 and 1999 CBAs by partially rescinding the 1995 settlement agreement. Under the clear language of the national CBA they rescinded a local agreement altering seniority rights that the national corporation and union officials had not approved.

The Court holds Delphi did not breach the 1993 or 1999 CBA by partially rescinding the 1995 settlement agreement and returning the plaintiffs' skilled trades seniority date to the actual date of their indenture.

### B.

■ The plaintiffs also do not show the Union breached its duty of fair representation. "[A] union breaches its duty of fair representation only if its actions are either arbitrary, discriminatory, or in bad faith." *Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1387 (6th Cir.1994) (citation omitted); *accord Vaca v. Sipes*, 386 U.S. 171, 175, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Simple negligence or errors in judgment by a union are not sufficient to breach the duty of fair representation. *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983); *Farmer v. ARA Servs. Inc.*, 660 F.2d 1096, 1103 (6th Cir.1981). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citation omitted); *see also Walk v. P\*I\*E Nationwide, Inc.,* 958 F.2d 1323, 1326 (6th Cir.1992).

■ The plaintiffs say Bogan's unilateral decision to rescind the 1995 settlement agreement after a perfunctory investigation was arbitrary and the Union's failure to consider pursuing a grievance on behalf of the plaintiffs was done in bad faith. The plaintiffs also allege Bogan rescinded the 1995 settlement agreement as retaliation against Michael O'Donnell, the ex-local Union official who originally negotiated the agreement with local Delphi officials.

In support of their arguments, the plaintiffs say Bogan failed to interview the plaintiffs or any of the Union or Delphi officials who negotiated the 1995 settlement agreement. They also say he failed to contact Pamela Anderson, the person in charge of the 1995 apprentice selection process. These facts are not in dispute. However, they are insufficient to create a material issue of fact regarding the Union's duty of fair representation.

Bogan's investigation was not so perfunctory as to be arbitrary. Once Bogan was contacted about the June 2000 protest letter he spoke with current Local 717 representatives, including Chuck Church, the Skilled Trades Subchairman, Robert Sutton, the Shop Chairman, Jim Martin, the local union apprentice coordinator, and

Terry Gruver, Sutton's assistant. The local representatives presented Bogan with both sides of the dispute concerning the change in skilled trades seniority dates caused by the 1995 settlement agreement. Bogan reviewed the applicable sections of the 1993 and 1999 CBA's and spoke with national union and management officials about the 1995 settlement agreement. Finally, he spoke with counsel and Winfield about the correct interpretation of the agreements.

The plaintiffs do not challenge the defendants' description of Bogan's investigatory steps. They also fail to present any evidence showing Bogan had an inaccurate understanding of the dispute. The plaintiffs say by not interviewing them. Bogan showed he did not want to consider the real merits of the matter. Contrary to the plaintiffs' assertions, the evidence shows Bogan conducted a sufficient investigation to understand the competing concerns between the plaintiffs and the union members who sent the June 2000 complaint letter.

■ When performing their duties, union officials are not required to satisfy all members:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents ....

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *see also Ratkosky v. United Transp. Union*, 843 F.2d 869, 878–79 (6th Cir.1988) (stating that "[t]he mere fact that plaintiffs are a minority group within their union organi-zation and that they were adversely affected by the actions or inactions of the union does not establish that the union has acted with hostile or discriminating intent"). While the plaintiffs may have wished Bogan included them in his initial investigation, the Court holds that Bogan's investigation and subsequent partial rescission of the 1995 settlement agreement was not arbitrary.

■ The Union also did not breach its duty of fair representation when it failed to pursue a grievance on behalf of the plaintiffs.

> 'An action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith.' In order to prove a breach, the complaint must allege more than simply conclusory statements. 'In particular plaintiffs must make a showing that the action or inaction of the [union] representative complained of was motivated by bad faith ....' Moreover, a union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith.

*Williams v. Molpus*, 171 F.3d 360, 366–67 (6th Cir.1999) (internal citations omitted).

As explained above, Bogan adequately investigated the issue concerning the plaintiffs adjusted skilled trades seniority dates. After consulting with Winfield, his management counterpart, they decided to partially rescind the 1995 settlement agreement and adjust the plaintiffs' skilled trades seniority dates to the actual dates of their indenture, consistent with the 1993 and 1999 CBAs. Both national Union and Delphi officials were involved with this decision. Union officials met with the plain-

tiffs in October 2000 and January 2001 and explained the Union's decision.

The plaintiffs inquired about a grievance over their loss of skilled trades seniority. After being involved in the process from the beginning, and reaching the conclusion the 1995 settlement agreement partially violated the 1993 and 1999 CBAs, Bogan and the Union had a good faith reason to believe the plaintiffs' potential grievance would lack merit.

Finally, the plaintiffs submit Michael O'Donnell's affidavit in which he says Bogan decided to partially rescind the 1995 settlement agreement in an attempt to embarrass and retaliate against him for opposing Bogan on previous Union positions. O'Donnell's accusation is based solely on his belief. Without any further evidence to support this accusation, the plaintiffs have not created a material issue of fact with regard to the Union's good faith in failing to consider the plaintiffs' grievance.

The Court holds the Union did not breach its duty of fair representation to the plaintiffs in its investigation of the skilled trades seniority date issue. Furthermore, the Court holds the Union did not breach its duty of fair representation by failing to consider the plaintiffs' grievance after partially rescinding the 1995 settlement agreement.

### IV.  Conclusion

For the reasons discussed above the Court grants the defendants' motions for summary judgment. The Court dismisses the plaintiffs' claims.

IT IS SO ORDERED.