RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BRANDON CHAPMAN,

               *Plaintiff-Appellant,*

    *v.*

UNITED AUTO WORKERS LOCAL 1005;
GENERAL MOTORS COMPANY,

               *Defendants-Appellees.*

No. 10-3616

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-00074—Dan A. Polster, District Judge.

Argued: March 2, 2011

Decided and Filed: March 1, 2012

Before: BATCHELDER, Chief Circuit Judge; MARTIN, BOGGS, MOORE, COLE, CLAY, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, KETHLEDGE, WHITE, and STRANCH, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:** David W. Neel, DAVID W. NEEL, LLC, Cleveland, Ohio, for Appellant. Joan Torzewski, HARRIS RENY TORZEWSKI, L.P.A., Toledo, Ohio, Angela M. Tsevis, LATHROP & GAGE, Kansas City, Missouri, for Appellees. **ON BRIEF:** David W. Neel, DAVID W. NEEL, LLC, Cleveland, Ohio, for Appellant. Joan Torzewski, HARRIS RENY TORZEWSKI, L.P.A., Toledo, Ohio, Angela M. Tsevis, David C. Vogel, LATHROP & GAGE, Kansas City, Missouri, for Appellees.

_____

[*]The Honorable Bernice Bouie Donald, Circuit Judge, did not participate in deciding the case.

1

———————————

## OPINION

———————————

JANE B. STRANCH, Circuit Judge.   Brandon Chapman brought an action against his employer, General Motors (GM), alleging breach of the collective bargaining agreement, and against his union, the United Auto Workers Local 1005 (UAW), alleging breach of the duty of fair representation, a combination referred to as a hybrid § 301/fair representation case.  He alleged the UAW failed to pursue his oral complaint against GM through the contractual grievance procedure.  Chapman did not challenge the alleged union error through the appeals procedure mandated by the UAW Constitution.  Instead, he filed this suit.

The district court held that Chapman was barred from suit because he failed to exhaust his internal union remedies and granted summary judgment to GM and the UAW.  Chapman appeals, arguing that our decision in *Williams v. Molpus*, 171 F.3d 360, 369 (6th Cir. 1999), requires that his case be remanded for a trial on his fair representation claim to determine whether the exhaustion  bar to suit is excused.

This case was accepted for initial *en banc* review to determine whether we erred in *Molpus*  when we held the general requirement that a plaintiff must exhaust internal union remedies or be barred from suit is excused if the union breaches its duty of fair representation.  Our reasoning on this issue in *Molpus* resulted from a misunderstanding of Supreme Court precedent and the national labor policy upon which it relies.  For the reasons articulated below, we overrule *Molpus* in part and, to the extent noted, its progeny, *Burkholder v. Int'l Union*, 299 F. App'x 531 (6th Cir. 2008).  We **AFFIRM** the district court's grant of summary judgment in favor of GM and the UAW.

## I. BACKGROUND

Chapman was hired as a temporary hourly employee at GM on June 5, 2006, was released from employment during the regular two-week summer plant shutdown and rehired in July 2006. In June of 2007, Chapman wanted to take an additional week off after the annual shutdown to tour with his band. Chapman asked his stepfather, Bill Newman, who was a Union Committeeman for UAW Local 1005, if he could take off the additional week. Chapman did not speak with his assigned union representative or any member of GM management.

Newman spoke with Tom Danzey, a GM labor relations representative, about Chapman's situation. Danzey told Newman temporary employees were not entitled to leaves of absence; but, because Chapman had a clean record, he would not be barred from consideration for future temporary positions. Newman then told Chapman he was "good to go on vacation." Chapman never spoke with any management personnel at GM regarding the request for time off nor did he request or receive any paperwork showing that the time off had been approved.

After his absence, Chapman did not contact GM management about returning to work nor did he attempt to return to the plant. Instead, he spoke with Newman who contacted Danzey. Danzey said there were no openings for temporary employees. Chapman again talked to Newman, who said he would "take care of it" though Chapman stated he did not know what Newman meant by that. Chapman understood he could file a grievance but never filed one and never spoke to anyone in GM management, his own union representative, or anyone from the union except his stepfather. Newman discussed Chapman's situation with the new UAW Shop Chairman, Danny Smith, who told Newman not to write a grievance for Chapman. Chapman took no further action for a year.

On June 16, 2008, Chapman was re-hired as a temporary employee at GM. He alleges that around this time he learned that UAW representatives had not filed a grievance on his behalf and approached Ken Jelen, the UAW Shop Chairman who had replaced Smith, to explain his situation. On October 30, 2008, Jelen sent Chapman a

letter explaining Chapman had no case to pursue.  Chapman alleges Jelen told him that Smith had "messed it up" and Chapman's predicament should have never happened. Chapman did not pursue an appeal of Jelen's decision through the internal grievance procedures as required by the UAW Constitution.

Instead, Chapman brought suit.  His hybrid § 301/fair representation action alleged breach of the collective bargaining agreement against GM and breach of the duty of fair representation against the UAW.  *See* 29 U.S.C. § 185.  The district court granted the motions for summary judgment of GM and the UAW and dismissed the case.  *See Chapman v. UAW Local 1005*, No. 1:09-CV-74, 2010 WL 1417008 (N.D. Ohio Apr. 6, 2010).  To litigate the merits of his § 301 claim against the employer, the district court reasoned, Chapman must first prevail on his fair representation claim against the UAW. *Id.* at *2.  The court held that Chapman's fair representation claim failed because Chapman did not exhaust his internal union remedies as required by the UAW Constitution.  *Id.* at *3.

## II.  STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo* and considers the facts and any inferences drawn from the facts in the light most favorable to the non-moving party.  *White v. Detroit Edison Co.*, 472 F.3d 420, 424 (6th Cir. 2006).  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. ANALYSIS

The case before us and the aspect of *Molpus* we reconsider hinge on understanding the difference between two sets of remedies: contractual remedies arising from a collective bargaining agreement and internal union constitutional remedies.  Here,

the contractual remedy is the grievance procedure established in the contract between the UAW and GM, a procedure created to settle disputes between an employee and GM. The internal union remedy is the appeal procedure established in the UAW Constitution, a procedure created to settle disputes between the UAW and the employees it represents in the workplace. A hybrid § 301/fair representation case encompasses both sets of remedies, each of which has its own distinct exhaustion doctrine. In *Molpus*, we applied the wrong exhaustion doctrine. An overlap in terms and doctrines led to our confusion; an overview of labor policy and case precedent will clear it up.

## A.  Historical Underpinnings of Exhaustion

Congressional policy is the touchstone guiding development of the labor-law case precedent that applies to this case. Section 203(d) of the Labor Management Relations Act (LMRA) provides, "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). The seminal Supreme Court instruction on this national policy is found in the Steelworkers Trilogy,[1] three labor law opinions issued in 1960 that explain why the judiciary shall defer to the method of dispute resolution selected by the parties. Congress and the courts determined that allowing the parties to implement their own system of industrial self-government would help achieve industry stabilization and industrial peace. *Warrior & Gulf*, 363 U.S. at 578–79. They also recognized that rapid and industry-specific resolution of all disputes between the parties would relieve the judiciary from the adjudication of disputes that otherwise could overwhelm the court system.

---

[1] *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596–97 (1960) (federal courts are not to "review the merits of an arbitration award," but only determine whether the award "draws its essence from the collective bargaining agreement"); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–83 (1960) (holding that grievance machinery "is at the very heart of the system of industrial self-government" and the courts should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) (holding that because the parties bargained for the "arbitrator's judgment," the underlying "question of contract interpretation" is for the arbitrator, and the courts have "no business weighing the merits of the grievance").

The two doctrines of exhaustion in question here developed in response to these historical purposes. The extent of judicial deference was first made clear in the application of exhaustion requirements to contractual grievance procedures. In *Republic Steel Corp. v. Maddox*, the Supreme Court held that, before bringing suit, employees are required to "exhaust" contractual grievance and arbitration procedures set forth in the collective bargaining agreement. 379 U.S. 650, 652–53 (1965). As will prove important to this case, the Court referred to both codified national labor policy and the practical need to solve a problem at its source when holding: "employees . . . must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress[;]" and "there can be no doubt that the employee must afford the union the opportunity to act on his behalf." *See id.* at 652–53 (emphasis added). Failure to exhaust contractual remedies thus became a bar to litigation.

The workplace realities that prompted judicial deference to contract remedies also set limits on that deference. The Supreme Court recognized that a litigation bar for failure to exhaust contract remedies can work an unacceptable injustice when the union acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation to the employee. *See Vaca v. Sipes*, 386 U.S. 171 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976). When the union breaches this duty in representing the employee against the employer, the failure to exhaust contractual grievance remedies may be the result of the union's actions, not the employee's. *See Vaca*, 386 U.S. at 185–86. Thus, where the employee can prove that the union breached its duty in handling his grievance, his case may proceed despite his failure to exhaust the contract remedies and notwithstanding the bar of finality normally accorded the grievance or arbitration proceeding with the employer. *See id.* at 185–87; *Hines*, 424 U.S. at 566–67.

Out of these cases grew the present litigation form, combining claims against the employer and the union into one hybrid case. The suit against the employer alleges a breach of the collective bargaining agreement under § 301 of the LMRA. The suit against the union alleges breach of the union's duty of fair representation, implied under

the scheme of the National Labor Relations Act.  29 U.S.C. § 158; *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).  The two claims, however, are inextricably interdependent: "To prevail against either the company or the Union, [the employee] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."  *Hines*, 424 U.S. at 570–71; *see also DelCostello*, 462 U.S. at 164–65.  The employee must prove both claims to recover from either defendant.  *See DelCostello*, 462 U.S. at 165; *White*, 472 F.3d at 425; *Driver v. USPS, Inc.*, 328 F.3d 863, 868 (6th Cir. 2003).  *Vaca* and *Hines* clarified the hybrid form of § 301/fair representation cases and established the rules governing exhaustion of *contractual remedies* arising from a collective bargaining agreement.

In addition to contractual remedies and the exhaustion doctrine pertaining to them, § 301/fair representation cases also concern internal union remedies and an exhaustion doctrine applicable to them.  This overlap of the language of remedies and exhaustion led to our confusion in *Molpus*.  The case of *Clayton v. International Union*, 451 U.S. 679 (1981), can set us right again.  There the Supreme Court explained the distinction between the sets of remedies:

> In contrast to *contractual grievance and arbitration procedures*, which are negotiated by the parties to a collective-bargaining agreement and are generally designed to provide an exclusive method for resolving disputes arising under that agreement, *internal union appeals procedures* are created by the union constitution and are designed to settle disputes between an employee and his union that arise under that constitution.

*Id.* at 695–96 (emphasis added).  The Court also addressed an employee's duty to exhaust internal union remedies and explained when an employee is exempt from that duty.

**B.  Exhaustion of Internal Union Remedies: *Clayton***

In *Clayton*, the Supreme Court set forth guidance for determining when failure to exhaust internal union remedies will bar § 301/fair representation litigation.  It focused on one strain of  national labor policy articulated in *Republic Steel*, the encouragement of "private rather than judicial resolution of disputes arising over the

interpretation and application of collective-bargaining agreements." *Clayton*, 451 U.S. at 687 (citing *Hines*, 424 U.S. at 567, 570–71). The Court noted two avenues for satisfying that policy: "Where internal union appeals procedures can result in **either** complete relief to an aggrieved employee **or** reactivation of his grievance, exhaustion [of internal union remedies] would advance the national labor policy of encouraging private resolution of contractual labor disputes." *Id.* at 692 (emphasis added). Additionally, an important practical purpose is achieved by requiring exhaustion in either circumstance; it allows the union the opportunity "to rectify the very wrong of which the employee complains[.]" *Id.* at 692 n.21.

The Supreme Court recognized "courts have discretion to decide whether to require exhaustion of internal union procedures[,]" but the Court articulated three factors relevant to a court's exercise of discretion: (1) "whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim"; (2) "whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks"; and (3) "whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Id.* at 689. If a court finds any of these factors to exist, "the court may properly excuse the employee's failure to exhaust." *Id.*

## C. Circuit Precedent and *Molpus*

Our circuit has followed the *Clayton* model, reviewing the affirmative defense of failure to exhaust internal union remedies as the first step in § 301/fair representation litigation. We required plaintiffs to show that internal union remedies were exhausted, or were futile, before allowing them to litigate a claim alleging a union's breach of the duty of fair representation. *See*, *e.g.*, *Monroe v. Int'l Union, UAW*, 723 F.2d 22, 25–26 (6th Cir. 1983) (affirming district court's grant of summary judgment for failure to exhaust union appeals procedures under *Clayton* without examining whether union breached duty of fair representation); *Wagner v. Gen. Dynamics*, 905 F.2d 126, 127–29 (6th Cir. 1990) (per curiam) (holding plaintiff's failure to exhaust internal union

remedies could not be excused); *Rogers v. Bd. of Educ. of Buena Vista Schs.*, 2 F.3d 163, 166–67 (6th Cir. 1993) (affirming dismissal, under *Clayton*,  of claim based on Michigan's Public Employees Relations Act for failure to exhaust internal union remedies).

The exhaustion of remedies discussion in *Molpus*, 171 F.3d at 369, carried into *Burkholder*, 299 F. App'x at 535–37, stands as an anomaly in our jurisprudence.  On appeal to this Court in *Molpus*, the UAW reiterated its argument that plaintiff's § 301/fair representation cause of action was barred by his failure to exhaust internal union remedies.  This Court disagreed, noting, "[t]he general requirement that a grievant must exhaust his or her *internal union remedies* . . . is excused if the union breaches its duty of fair representation."  *Molpus*, 171 F.3d at 369 (emphasis added).  The opinion quoted *Hines* as authority, stating "'[t]he union's breach of duty relieves the employee of an express or implied requirement that disputes be settled [through] *contractual grievance procedures*[.]'"  *Id.* (quoting *Hines*, 424 U.S. at 567) (emphasis added).  *Molpus* mistakenly applied the exhaustion doctrine applicable to contractual grievance procedures discussed in *Hines* to a case that turned on failure to exhaust internal union remedies.  Because Chapman relies on the *Molpus* analysis in this appeal, we accepted the case *en banc* to address the confusion in *Molpus* and *Burkholder*.  Though the conflation of exhaustion doctrines continued in *Burkholder*, the concurrence in that case challenged the lead opinion's analysis of *Molpus* and suggested a need to correct *Molpus*:

> [I]ts broad language unconditionally waives the exhaustion requirement for any plaintiff who alleges a breach of duty of fair representation in his or her complaint.  This consequence is contrary to the general policy of having labor disputes first submitted to internal union grievance procedures . . . and the UAW appropriately criticizes the *Molpus* language for that reason.
> . . . *Molpus* should . . . be closely scrutinized if the issue comes before a future *en banc* panel of this court.

*Burkholder*, 299 F. App'x at 538 (Gilman, J., concurring) (internal citations omitted).

The overly broad language regarding exhaustion of internal union remedies in our *Molpus* decision resulted from our reliance on *Hines*, a contractual remedies case. We confused constitutional union remedies with contractual grievance procedure remedies arising from a collective bargaining agreement. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir. 1978) ("Exhaustion of internal union remedies and resort to exclusive contractual remedies are separate prerequisites to an employee suit."). This led to application of the exhaustion doctrine for contractual remedies instead of the exhaustion doctrine applicable to internal union appeals procedures as explained by the Supreme Court in *Clayton*. *Cf. Winston v. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89*, 93 F.3d 251, 255 (6th Cir. 1996) (describing distinction between contractual remedies and internal union remedies, but holding *Clayton* inapplicable because contractual remedies, not internal union remedies, were at issue in that case).

The *Burkholder* concurrence recognized that the use in *Molpus* of the contractual exhaustion doctrine for an internal union remedies case undercut the rationale of prior labor-law precedent. *Hines* had reasoned that it is appropriate to excuse an employee from exhaustion of the contractual grievance procedure where failure to exhaust is due to the union's error or wrongdoing and, thus, is beyond the employee's control. *Clayton* recognized that where the employee chooses not to undertake exhaustion of internal union remedies, and thereby denies the union an opportunity to correct the very error of which he complains, the rationale of *Hines* is simply inapplicable.

Continuation of the *Molpus* analysis would also ignore practical considerations, recognized since the Steelworkers Trilogy, that undergird national labor policy. Exercising internal union remedies requires dialogue among those involved in the process and can repair a claimed wrong or explain why no wrong occurred, all short of litigation. Allowing employees to sidestep this system substitutes litigation for the method chosen by the employer and union for orderly resolution of employee grievances. It denies the system an opportunity to work and, because the suit is a hybrid § 301/fair representation case, carries both employer and union into the courthouse. Plaintiffs are encouraged to file complaints alleging a breach of the duty of fair

representation because that allegation results in a trial on the merits under *Molpus*. That defeats the purpose of exhaustion and wastes judicial resources.

These are the problems Congress sought to avoid by enacting a policy declaring private resolution by the parties as the preferred method for settling workplace disputes. Therefore, in light of both judicial precedent and Congressional policy, we overrule those portions of *Molpus* and *Burkholder* analyzing the exhaustion of internal union remedies, *Molpus*, 171 F.3d at 369; *Burkholder*, 299 F. App'x at 535–37, thus aligning our precedent with the analysis articulated in *Clayton*. The remaining aspects of *Molpus* and *Burkholder* remain good law.

**D. Application of *Clayton* to This Case**

It is undisputed that Chapman failed to undertake his obligation to exhaust the internal union remedies mandated by the UAW Constitution. He did not avail himself of an appeal at any level of the multi-level appeal process provided in Article 33 of the UAW Constitution. To determine whether his failure to exhaust internal union remedies should be excused, we begin with review of the three relevant *Clayton* factors. We inquire: whether union officials were so hostile that Chapman could not hope to obtain a fair hearing on his claim; whether the internal union appeals procedures would be inadequate either to reactivate his grievance or to award him the full relief he seeks; or, whether exhaustion of internal procedures would unreasonably delay his opportunity to obtain a judicial hearing on the merits of his claim. *Clayton*, 451 U.S. at 689. If Chapman does not establish any of these factors, then his failure to exhaust his internal union remedies bars him from bringing suit against the UAW and also bars his suit against GM. *See DelCostello*, 462 U.S. at 164–65; *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003).

Chapman introduced no evidence that union officials were hostile or that the internal union appeal procedures would unreasonably delay a judicial hearing on his claim. Accordingly, our review turns to the second factor, whether the internal union remedies are adequate, i.e. whether  they could have reactivated his grievance or awarded him full relief.

The record reveals that the internal union appeal procedures are adequate. Upon being told by Ken Jelen, the UAW Shop Chairman, that he had no case to pursue, Chapman could and should have initiated the appeal procedures under Article 33 of the UAW Constitution. Section 1 therein authorizes an appeal of "any action, decision, or penalty" or a "failure or refusal to act" by a Local Union or its officers. Section 2 specifically references the progressive steps for "any challenge to the handling or disposition of a grievance[.]" Chapman's claim that a Union official told him he had no valid grievance and refused to proceed with any processing is a classic example of a "refusal to act" or improper "handling or disposition of a grievance" that should be challenged through the internal union appeals procedures. *See Ryan v. Gen. Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir. 1989) ("It is well-settled that the opinion of a union representative cannot be construed as a waiver of the UAW's constitutional appeal requirements.").

Chapman could have initiated his internal union appeal orally or in writing to the Local membership and continued to appeal beyond the Local to the International Executive Board and then to the Convention Appeals Committee or the independent Public Review Board (PRB). The PRB has the authority to require the Union to pay money damages, back pay, or both and to require the Union to reinstate and process a grievance.

Chapman could have challenged the union's failure to pursue his contractual grievance whether that grievance had been initiated orally or in writing. Oral grievances are a recognized part of the contractual grievance procedure in the collective bargaining agreement: Step One begins with oral presentation of the grievance and concludes with reducing the grievance to writing. Pursuant to a Letter Agreement between GM and the UAW, had Chapman undertaken the internal union procedures and successfully appealed the Union's failure to pursue the grievance, GM could have reinstated Chapman's grievance at the step in the contractual procedure at which the erroneous disposition of the grievance occurred. Therefore, the internal union appeal procedures were adequate

to reactivate Chapman's grievance and he cannot satisfy the second *Clayton* factor to excuse his failure to exhaust.

Chapman has not established any of the three *Clayton* factors upon which the Court may properly excuse his failure to exhaust his internal union remedies. Therefore, his fair representation claim against the UAW is barred. Because, in this hybrid case, Chapman's fair representation claim is "inextricably interdependent" with his § 301 claim, *see DelCostello*, 462 U.S. at 164–65, he must prevail on his fair representation claim against the Union before he may litigate the merits of his § 301 claim against GM. *UPS, Inc. v. Mitchell*, 451 U.S. 56, 67 (1981) (Stewart, J., concurring). Thus, Chapman's hybrid § 301/fair representation suit is barred for failure to exhaust internal union remedies.

## IV.  CONCLUSION

Discrete portions of our decisions in *Molpus* and *Burkholder* are inconsistent with Supreme Court precedent and contrary to national labor policy. Therefore, we overrule those portions of *Molpus* and *Burkholder*, as fully explained in this opinion. Because Chapman failed to establish a legally justifiable basis under *Clayton* for his failure to exhaust his internal union remedies, his failure is not excused and the exhaustion bar applies. Accordingly, we **AFFIRM** the district court's grant of summary judgment and dismissal of Chapman's suit against GM and the UAW.