NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0476n.06

**No. 16-3494**

**FILED**
Aug 16, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TIMOTHY L. PEARSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| UNITED AUTOMOBILE WORKERS | ) | COURT FOR THE SOUTHERN |
| INTERNATIONAL UNION and UNITED | ) | DISTRICT OF OHIO |
| AUTOMOBILE WORKERS INTERNATIONAL | ) | |
| UNION LOCAL NO. 863, | ) | OPINION |
| | ) | |
| Defendants-Appellees. | | |

---

BEFORE:    SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** After Timothy Pearson was fired by Ford Motor Company, his local union affiliate filed a grievance challenging his discharge. The Union[1] pursued the grievance through all stages of the dispute resolution process contractually agreed to by Ford and the Union. After Ford denied the grievance, the Union chose to pursue the grievance to arbitration, where an arbitrator denied the grievance in 2008. Pearson alleges that he discovered in 2012 that, prior to the arbitration, Ford had presented the Union with a lucrative settlement offer that was never communicated to him—an offer he would have accepted. He brought this suit against the Union alleging breach of the duty of fair representation. The district

---

[1]This opinion uses "the Union" to refer collectively to both the international body, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and the local body, Local Union 863, both of which are Defendants here.

court granted the Union's motion for summary judgment, concluding that Pearson failed to exhaust his internal Union remedies and even if he had done so, he failed to establish a breach of the Union's duty of fair representation as a matter of law. We AFFIRM.

## I.     BACKGROUND

In his complaint, Pearson alleges that he worked for Ford from 1978 through April 6, 2006, when he was terminated a few years shy of the 30 years of service necessary to be eligible for a full retirement package. The Union filed a grievance on Pearson's behalf, stating that Ford had violated the collective bargaining agreement (CBA) between the Union and Ford by terminating Pearson for unjust cause, and demanding reinstatement and back pay. The Union took the grievance through all stages of the CBA's procedure for resolving employee grievances against the employer and, upon Ford's denial of the grievance, chose to take the grievance to arbitration.

Prior to arbitration, the Union and Ford negotiated about potential settlements. The record reveals that Union representatives contacted Pearson by phone nine times between January 1, 2008 and the October 23, 2008 arbitration. The parties do not dispute that an early offer from Ford was conveyed to Pearson by the Union and rejected by him. Pearson alleges that Ford conveyed a more generous offer to the Union in April and then again in August or September, but the Union failed to provide that information to him, and told Ford that he rejected the offer.

Pearson's grievance was taken through the full arbitration procedure, ending in a decision by the arbitrator to deny the grievance and uphold Pearson's termination. Pearson alleges that he first learned of Ford's 2008 offer in 2012, during a deposition in a separate lawsuit he filed

against Ford.  Pearson alleges that had the Union informed him of that offer in 2008, he would have accepted the settlement and not proceeded to arbitration.

The Union Constitution provides remedies—procedures referred to as an internal "appeals"[2] process—for members who are dissatisfied with the Union's processing of their grievance/arbitration; a member is obligated to fully exhaust this process before resorting to a civil court or government agency.  The Union's internal appeals process permits members to challenge Union officials' actions through review by progressively higher Union bodies. Pearson did not pursue this remedy.  Instead, Pearson filed an unfair-labor-practice charge against the Union with the National Labor Relations Board (NLRB), claiming that the Union's alleged failure to communicate the settlement offer breached the duty of fair representation.  The NLRB processed and dismissed the charge, finding no evidence that the Union's decision to reject the settlement was arbitrary, capricious, discriminatory, or in bad faith.  *UAW Local 863 (Ford Motor Co.)*, Case No. 09-CB-092360 (N.L.R.B. Dec. 28, 2012) (dismissal letter), https://www.nlrb.gov/case/09-CB-092360.

Pearson next brought this suit against the Union alleging breach of its duty of fair representation, basing his claim on Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.  Pearson does not challenge the quality of the Union's representation at the arbitration hearing.  Rather, he argues that the Union's negligent failure to communicate the settlement offer led him to proceed with arbitration, depriving him of a settlement that he would have accepted.  The district court granted summary judgment to the Union, concluding that the suit was barred by the applicable six-month statute of limitations, but this court disagreed

---

[2]Although the Union constitution refers to this as an "appeals" process, it includes both a member's initial internal challenge to Union officials' actions as well as subsequent internal appeals of any initial decision.  This process is unrelated to the process contractually agreed to between the Union and Ford to resolve employee grievances against the employer, and does not cover "appeals" of the arbitrator's decision regarding Pearson's grievance against Ford.

with the statute of limitations analysis and vacated that order. We remanded for the district court to resolve in the first instance whether Pearson failed to exhaust his internal Union remedies and whether the Union was entitled to judgment as a matter of law. The district court granted summary judgment on both failure to exhaust and on the merits. Pearson timely appealed.

## II.     ANALYSIS

Before suing his union in federal court, a plaintiff alleging breach of the duty of fair representation in processing a grievance must first undertake and exhaust internal union remedies. *Clayton v. Int'l Union, United Auto., Aerospace, & Argic. Implement Workers of Am.*, 451 U.S. 679, 689 (1981) ("[N]ational labor policy . . . encourages private rather than judicial resolution of disputes arising over collective-bargaining agreements."). There are three exceptions to this exhaustion requirement: (1) if union officials are so hostile that the plaintiff has no hope of a fair hearing; (2) if the internal union appeals procedures are inadequate either to reactivate the plaintiff's grievance or to award him the full relief he seeks; or (3) if internal procedures would unreasonably delay the plaintiff's opportunity to obtain a judicial hearing on the merits. *Id.* The plaintiff bears the burden of showing that exhaustion should be excused. *See Chapman v. UAW Local 1005*, 670 F.3d 677, 683, 685 (6th Cir. 2012) (en banc).

Pearson concedes that he failed to exhaust his internal Union remedies by not pursuing the Union's internal appeals process. Nonetheless, Pearson argues that his failure to exhaust should be excused because the second and third exceptions apply. As to the second exception, he argues that internal procedures would have been inadequate for three reasons. First, Pearson claims he was no longer a Union member in 2012, and thus lacked standing to pursue an internal appeal. Second, he argues that his claim would have fallen outside the jurisdictional limits for internal appeals prescribed in the Union constitution. Third, he contends that an internal appeal

would not have been able to award him the full relief he seeks, which includes back pay, lost retirement income, and mental anguish damages. As to the third exception, he argues that the internal appeals process would have taken too long, unreasonably delaying his judicial hearing. Most of Pearson's evidence for these arguments is drawn from the deposition testimony of Richard Isaacson, a Union official who oversees internal appeals procedures.

### A.      Standing

Pearson first argues that his failure to exhaust should be excused because he would not have had standing to bring an internal appeal. The Union constitution permits an internal appeal by any "member." Isaacson testified that once a person becomes a member, he or she remains a member for life unless that person actively withdraws from membership in writing. Pearson does not contest this testimony and it is undisputed that Pearson never withdrew his membership. Nonetheless, Pearson claims that he was not a member in 2012, and thus could not pursue an internal appeal, because he was listed in membership records as an active member until February 2011 (and presumably not thereafter). Records showed that the Union no longer charged him for dues after April 2006, and that he received the Union magazine until August 2008 (and presumably not thereafter). Pearson's argument fails because, as Isaacson explained, there is a difference between active and inactive membership. Members who are working are considered active and pay dues. Pearson provides evidence suggesting that he was not an *active* member in 2012, but not that the internal appeals process is limited to active members. Neither the text of the Union Constitution nor Isaacson's testimony suggests that inactive members cannot pursue internal appeals. Therefore, we reject Pearson's argument on standing.

**B.** **Jurisdiction**

Pearson's second argument for why his failure to exhaust should be excused is that the internal appeals process would have lacked jurisdiction over his claim. The Union Constitution permits any member to challenge "any action, decision, or penalty" by the Union or its officers or representatives. "A failure or refusal to act" that allegedly results in injury may also be challenged. Pearson argues that he has not alleged an "act" contemplated by the internal appeals process, but he ignores the specific language permitting challenges to a failure to act. We therefore reject his initial argument on jurisdiction.

Even if his claim fell within the general scope of the internal appeals process, Pearson further argues that one of the Union's final appellate bodies, the Public Review Board (PRB), would have lacked jurisdiction over his claim. As a preliminary note, Pearson might have succeeded in the initial or intermediate steps of an internal appeal before reaching the PRB, such that its jurisdiction would be irrelevant. The PRB, moreover, is not the only final appellate body. Members may choose to appeal decisions of the intermediate body to either the PRB, an independent body, or the Convention Appeals Committee (CAC), which consists of Union members from each of the Union's regions who meet semiannually. Pearson concedes that he "could have opted for an appeal to the CAC rather than the PRB." However, he argues that it would "strain credulity that the CAC, composed as it is of rank-and-file UAW members, would have the fortitude to discredit [Union] Representatives and award Mr. Pearson" the monetary damages he seeks. This speculation, without any allegation that Union officials are hostile to Pearson, is insufficient to meet Pearson's burden to show that internal Union appeals procedures are inadequate so as to excuse his failure to exhaust. Thus, without regard to whether the PRB would have had jurisdiction to hear Pearson's claim, his arguments on jurisdiction fail.

Even if we review Pearson's arguments regarding the PRB's jurisdiction, the record reveals them to be equally unavailing. The PRB has jurisdiction over appeals concerning "action or inaction relative to the processing of a grievance against an employer" as long as the member alleges that "the matter was improperly handled because of fraud, discrimination, collusion with management, or that the disposition or handling of the matter was devoid of any rational basis." Pearson argues that the PRB would have lacked jurisdiction over his appeal both because the communication of a settlement offer is unrelated to the "processing of a grievance" and because his allegations do not fit within the other jurisdictional requirements. As the district court noted, the Union Constitution does not define or limit the word "processing," and Pearson provides no evidence beyond the wording itself that the PRB would not consider the communication of settlement offers to be part of the "processing of a grievance." We agree with the district court that the "processing of a grievance," by its ordinary meaning, would generally include the communication of offers to settle the very grievance being pursued by the Union.

As for the PRB's remaining jurisdictional limits, the PRB has jurisdiction over appeals alleging that the Union's handling of a grievance was devoid of any rational basis. Pearson provides no evidence that he would have been unable to allege that the Union's failure to communicate the settlement offer lacked any rational basis, and thus fit his claim within the PRB's jurisdictional limits. Pearson argues on appeal that his complaint alleged no conduct "which could be characterized as irrational," but his complaint in fact described the failure to convey Ford's settlement offer as "inexplicable, irrational and arbitrary." Importantly, the text of the Union Constitution does not suggest that the PRB would have been unable to hear Pearson's complaint alleging failure to convey a settlement offer. The only other evidence in the record regarding the PRB's jurisdiction supports this view: Isaacson's testimony suggests that PRB's

jurisdictional limits were intended to exclude claims challenging reasonable mistakes—judgment calls—in the handling of a grievance and claims regarding the interpretation of the Union's collective bargaining agreements. These purposes would not exclude Pearson's claim, which neither challenges a judgment call nor calls for interpretation of a collective bargaining agreement.

For all these reasons, we reject Pearson's arguments on jurisdiction.

## C.      Relief

Third, Pearson argues that his failure to exhaust should be excused because the internal appeals procedure would not have been able to afford him all the relief he requested. For this argument, as above, Pearson focuses only on the PRB, without addressing the relief available from the initial and intermediate internal review bodies. Although he alleges without citation that the CAC may not award monetary damages, the Union cites a district court case stating that the "CAC has the authority to order the Union to pay monetary damages to appellants." *Hall v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, No. 3:10-CV-418-DSC, 2013 WL 3043637, at \*10 (W.D.N.C. June 17, 2013) (cited in Appellees' Br. 16). Because Pearson presents no evidence that the Union's initial review body, the intermediate body, or the CAC would not be able to award him the full relief he seeks, he has not met his burden to show that the internal appeals procedures are inadequate. He has thus not met his burden to show that his failure to exhaust should be excused on this ground.

## D.      Delay

Pearson's final argument for excusing his failure to exhaust is that the internal appeals process would have unreasonably delayed his opportunity to obtain a judicial hearing on the merits. He places significant weight on the fact that four years passed between the alleged

settlement offer in 2008 and when he discovered it in 2012. But *Clayton* permits courts to excuse failure to exhaust when the *internal appeals procedures* would unreasonably delay a judicial hearing. 451 U.S. at 689. Pearson cites *Geddes v. Chrysler Corp.* for the proposition that "the mere passage of time is seen as militating against requiring the plaintiffs to go back now and plead their case to the Union Appeals Board." 608 F.2d 261, 265 (6th Cir. 1979). But *Geddes* remanded rather than finding exhaustion excused, so that comment was dictum. More importantly, *Geddes* predated *Clayton*, so we did not at that time have the benefit of the Supreme Court's instruction that the delay inquiry is to be applied to the unions' internal appeals procedures. Under *Clayton*, our analysis must ask whether Pearson's decision not to comply with the internal appeal process mandated by the Union Constitution can be excused because that process would have unreasonably delayed his opportunity to obtain a judicial hearing.

Pearson identifies nothing unique about his case that would make his internal appeal take an unusually long period of time. Instead, he attacks the general timescale of the Union's internal appeals process as unduly lengthy. Isaacson testified that the initial and intermediate stages of the Union's internal appeals process could take, altogether, between two months and years depending on the complexity of the case. He testified that PRB review could take a year, or could be longer or shorter. Pearson examined the timelines of a set of PRB decisions provided by the Union in discovery, finding that the PRB process took between three months and four years in those cases, for an average of about eighteen months. This record shows that the entire, multi-stage internal appeals process could take less than one year for a simple case—and this case is not particularly complex. On average, the record suggests that if a member was unsuccessful at the first or second stage, it might take between one and three years to complete all stages of appeals.

This appeals process does not constitute an unreasonable delay. Our precedent supports this conclusion and undermines Pearson's challenge to the generic length of the process in the UAW's Constitution. Our en banc decision in *Chapman* refused to excuse exhaustion under the same appeals process, indicating that the procedures established in this Union's Constitution, by themselves, do not impose unreasonable delay. *See Chapman*, 670 F.3d at 685–86.

### III.     CONCLUSION

Before seeking a judicial remedy, Pearson was obligated to follow the private contractual remedies available in the internal appeals process established in the Union's Constitution unless he proves that his failure to exhaust should be excused. Pearson has not met his burden of showing that exhaustion should be excused in his case. Because this failure bars his fair representation claim, we need not consider the district court's independent grant of summary judgment on the merits. For the reasons stated above, we affirm the district court's grant of the Union's motion for summary judgment.