NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0147n.06

Case No. 17-3879

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

FILED
Mar 21, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JERRY SLIGHT, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| LOCAL 12, INTERNATIONAL UNION | ) | OHIO |
| UNITED AUTOMOBILE, AEROSPACE | ) | |
| AND AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: MERRITT, CLAY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. This is a case about process—about whether several employees of Chrysler must pursue administrative remedies before bringing a federal court lawsuit against the union and the car company for fair representation and fair pay. The district court granted summary judgment to the defendants on the ground that the employees failed to exhaust their internal union remedies before filing this lawsuit. We agree and remand the case to the district court with instructions to hold the case in abeyance while the employees pursue their internal union remedies.

I.

In May 2013, Local 12 of the United Automobile, Aerospace, and Agricultural Implement Workers of America filed grievances on behalf of thirty-four employees against

Chrysler targeting its failure to pay them full-time pay for full-time work. The collective bargaining agreement spells out a four-step process for handling such grievances. The grievances made their way to the fourth step. At that point, it fell to union representative Troy Davis to investigate the grievances, discuss them with company representatives, and decide whether to pursue them further. After reviewing the grievances, Davis withdrew them in January 2014.

The grievance process under the collective bargaining agreement, it deserves note, differs from the internal union appeals process. One provides a way to resolve disputes between the company and the union; the other provides a way to resolve disputes between the union and its members. Under the internal union appeals process, the union requires any member "aggrieved by any action, decision or penalty imposed" by a union official to exhaust internal union appeals before suing it. R. 51-27 at 14. The UAW Constitution says that an aggrieved employee may appeal any adverse decision by the union, including its decision to withdraw a grievance, to the International Executive Board of the UAW, and eventually to the Convention Appeals Committee or the Public Review Board.

A Letter Agreement between Chrysler and the UAW provides that a grievance may be reinstated by means of such internal appeals. It says:

> [I]n those instances where the International Union, UAW, by either its (i) Executive Board, (ii) Public Review Board, or (iii) Constitutional Convention Appeals Committee has reviewed the disposition of a grievance and found that such disposition was improperly effected by the Union or a Union representative involved, the UAW Chrysler Department may inform the Corporate Labor Relations Staff in writing that such grievance is reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred.

R. 51-26 at 4–5.

2

When Troy Davis refused to pursue the employees' grievance further in January 2014, he did not tell the employees about his decision. The employees did not find out about the withdrawal of their appeal until November 2014. Thinking no other remedy existed within the internal review process at that point, the employees sued Chrysler and the union under § 301 of the Labor Management Relations Act in federal court. 29 U.S.C. § 185. They contended (1) that Chrysler violated the collective bargaining agreement by not paying them a full-time wage and (2) that the union violated its duty of fair representation by withdrawing their grievances. The district court granted summary judgment to Chrysler and the union because the employees failed to exhaust all of their internal union remedies. The employees appealed.

II.

The legal principles for resolving claims under § 301 of the Labor Management Relations Act, often called hybrid contract/duty-of-fair-representation claims, are settled. There is a general rule: Employees must exhaust any internal union remedies before filing such a claim in federal court. *Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). And there are exceptions to the rule: Exhaustion may be excused if (1) the internal union appeals procedure offers no hope of reinstating a claimant's grievance; (2) union hostility toward the claimant leaves no prospect of a fair hearing; or (3) the internal procedures would unreasonably delay a judicial hearing on the merits. *Id*. The employees seek relief under all three exceptions. But not one of them applies.

*Prospect of reinstatement*. There's no question that the employees failed to exhaust their remedies by choosing not to seek relief at all stages of the union's internal appeals process. Article 33 of the UAW Constitution says that any employee "shall have the right . . . to appeal any action, decision, or penalty" by a union official. R. 51-27 at 9. That includes challenges to

3

"the handling or disposition of a grievance." *Id.* at 10. The Constitution provides multiple levels of appeal: first to the International Executive Board and then to the Convention Appeals Committee or Public Review Board. The Letter Agreement between Chrysler and the union, which clarifies and supplements the collective bargaining agreement, provides that a withdrawn grievance may be reinstated "at the step at which the original disposition of the grievance occurred" if the employee wins at any stage of the appeals process. R. 51-26 at 4–5. Despite all of this and despite the possibility of reinstatement, the employees did not seek relief through the internal union appeals process, thus establishing that they failed to exhaust all internal remedies.

The employees object to this conclusion, claiming they did not have to exhaust this review process because the collective bargaining agreement spares Chrysler from back pay liability for the period of time between the improper disposition of the grievance and its later reinstatement. True enough. But the internal union appeals process still may provide the employees what they want. Both the Convention Appeals Committee and the Public Review Board have the authority to order *the union* to pay money damages to its members. They thus may award the employees the back pay they seek.

True, the union appellate bodies may not order Chrysler to pay the employees the full-time wage moving forward. But they may order Chrysler to reinstate the grievance, and Chrysler may be forced to pay them the full-time wage after the grievance procedure runs its course.

The employees persist that reinstatement of the grievance does not remain a realistic possibility under the internal union appeals procedures. Section 30(b) of the collective bargaining agreement, they say, prohibits the union from reinstating grievances withdrawn "without precedent," which is to say grievance withdrawals that may not be used as precedents for other cases. But they stand alone in making this argument. Chrysler and the union agree that

§ 30(b) does not apply when one of the union appellate bodies decides that a grievance should be reinstated. The uncontradicted affidavits of Davis and union official Rick Issacson confirm this understanding of the agreement. And the Letter Agreement says just that. *See Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 802 (7th Cir. 2008) (finding that an identical letter agreement "serves to qualify" an identical provision of the collective bargaining agreement).

What of the possibility that the employees waited too long to appeal the withdrawal of their grievance? While Troy Davis withdrew the grievance in January 2014, the employees did not find out what had happened until November 2014. The UAW Constitution gave them thirty days to appeal that decision and those thirty days (whether measured from January 2014 or November 2014) have come and gone. But the UAW Constitution also allows the International President to "waive the time for filing the appeal if warranted by the circumstances." R. 51-27 at 13. There's good reason for the President to waive the time requirements here, since the employees failed to file an appeal because union officials told them (erroneously) that "it's too late to file an appeal," R. 51-4 at 8, and to "get a lawyer" instead, R. 51-12 at 2.

All told, the record makes clear that a grievance may be reinstated through the union's appellate process.

*Hostility.* Shifting gears, the employees argue that the hostility of the union toward them would make any further appeal futile. In making this argument, they point out that Davis "was in no hurry to advise plaintiffs on how to appeal," and they claim that Epley misled some of them about available remedies. Appellant's Br. 34. But union hostility toward members, as alleged here, excuses exhaustion only when it permeates each step of the internal appeals process. *Hammer v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 178 F.3d 856, 859 (7th Cir. 1991); *see Wagner v. Gen. Dynamics*, 905 F.2d 126, 128 (6th Cir.

1990). In this instance, the Public Review Board consists of "impartial persons of good public repute not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies." R. 51-27 at 7–8. There's no indication that members of that body (on which neither Epley nor Davis sits) were so hostile to the employees' claims as to make any further appeal futile.

*Delay.* The employees add that the internal appeals process will unreasonably delay access to a judicial hearing on the merits. Precedent points in the opposite direction. Twice before (and now three times), we have confirmed that this same internal appeals process does not impose unreasonable delay. *Chapman v. United Auto Workers Int'l Union*, 670 F.3d 677, 685–86 (6th Cir. 2012) (en banc); *Pearson v. United Auto. Workers Int'l Union*, 694 F. App'x 401, 406 (6th Cir. 2017). The employees offer no tenable reason why that process should be treated differently here.

One loose end remains. The employees argue that the district court improperly granted summary judgment to the union on Count II of their complaint, which alleges that the union violated its duty of fair representation under § 9(a) of the National Labor Relations Act. 29 U.S.C. § 159. This claim, they say, is "independent of the hybrid Section 301 claim in Count I," R. 1 at 10, and there's no duty to exhaust internal union remedies for fair representation claims that do not arise under § 301. But Count II does not state a claim "independent" of the § 301 claim. It simply says that the union's conduct "enumerated in Count I and elsewhere above" qualifies as a violation of the duty of fair representation under § 9(a) of the Act. *Id.* at 9. We have long construed such claims as § 301 claims. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 562 (6th Cir. 1990). The district court properly granted summary judgment to the union on this count too.

Because internal union appeals procedures may provide the employees with the relief they seek, the employees must exhaust the union's internal remedies before suing it. We thus remand the case to the district court with instructions to hold it in abeyance while the employees pursue their union appeals.